**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CARMELO GAGLIARDI, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:02CV478 (EBB) |
| vs. | : | |
| | : | |
| THE EAST HARTFORD HOUSING | : | |
| AUTHORITY, and in their individual | : | |
| official capacities ANDRE DUMAS, JOHN | : | |
| ROGHN, ROBERT COUNIHAN, | | |
| JEFF ARNS, TERRY MADIGAN and | : | |
| ROBERT LINDBERK, | : | |
| Defendants. | : | APRIL 19, 2004 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

Pursuant to Rule 56 of the of the Federal Rules of Civil Procedure, the plaintiff hereby

objects to the defendants motion for summary judgment. The defendants are not entitled to

summary judgment as a matter of law because the plaintiff has been successful in presenting

genuine issues of material facts.

**II.    FACTUAL BACKGROUND**

Carmelo Gagliardi ("Gagliardi" or "Plaintiff") has brought suit against the East Hartford

Housing Authority ("EHHA"), Andre Dumas ("Dumas"), Manager of Buildings, Grounds and

Facilities of the East Hartford Housing Authority, Robert Counihan ("Counihan"), Acting

Director of the East Hartford Housing Authority, Terry Madigan ("Madigan"), director of the

East Hartford Housing Authority, Jeffrey Arn ("Arn"), supervisor at the East Hartford Housing

Authority, John Roghn ("Roghn"), the executive director of the East Hartford Housing

1

Authority, and Robert Lindberk ("Lindberk"), the business agent for UNION-Local 1303-353.

This action is brought by plaintiff against defendants, who acting under color of state and federal law, charter, ordinance, regulation, custom or usage, have unlawfully violated plaintiff's constitutional rights to free speech and due process. The plaintiff further brings this action under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §621 et seq., (hereinafter sometimes referred to as the "ADEA"),  and Connecticut General Statutes ("CHFA.") 46a-58, 46a-60 et. seq, Connecticut General Statutes §31-290a as well as the state common law.

The plaintiff was hired by the defendant, the East Hartford Housing Authority in 1978 as a Maintenance Aid.  The plaintiff was the steward for AFSCME, Council 4, Local 1174 from 1998 to 2000.  The plaintiff became the Local 303-353 Union president in 2000.  The defendant, Roughn, refused to meet with the plaintiff because he was the Union president continuously throughout 2000.  When the plaintiff was hired, licensure was not a prerequisite to promotion to Maintenance Mechanic.  A B-4 license became a job requirement of Maintenance Mechanic in 1981.  This job description change was not negotiated by the Union.  Connecticut General Statutes § 20-340 exempts licensure requirements from electricians, plumbers, heating, piping and coding contractors and Journeymen, and Elevator and Fire Protection Sprinkler Craftsmen. The job postings for the Maintenance Mechanic position includes the following requirement: "Possession of a valid, current, occupational license issued by the State of Connecticut.  The required occupational license shall be at least equivalent to the full journeyman level status for a specific required discipline."

The plaintiff has requested to be promoted to Maintenance Mechanic at least eleven

2

times since 1989 and has been denied.  The plaintiff has consistently been denied a promotion despite being the most senior employee.  The plaintiff performs the duties of the Maintenance Mechanics but has not been promoted to the position and is not paid the salary of the Maintenance Mechanic.  The plaintiff performs, and has performed the duties of Maintenance Mechanic during regular hours as well as during "on-call" hours, since 1989.  In December 1996, a Maintenance Supervisor position became available and the plaintiff applied for the position along with two other individuals, Mike Seamon and Al Gerner.  Of the three candidates, the plaintiff had the most experience, twenty years.  Mike Seamon had fifteen years experience and Al Gerner had five years of experience.  The plaintiff was denied the position.

A second position for Maintenance Supervisor was filled by an outside individual in February 1997 and the plaintiff was never given the opportunity to apply for the job.  The February 1997 position for Maintenance Mechanic was filled by an outside individual.  The position was never posted and the plaintiff was never given the opportunity to apply for the job.  The position was filled by an individual who did not have a B-4 license for the Maintenance Supervisor position.  In 1998, another position for Maintenance Mechanic was filled by an outside individual.  The position never received notice of the position because he was on vacation and the plaintiff was never given the opportunity to apply for the job.  The defendants have given promotions to other individuals although they hold licenses  that do not govern the jobs that they perform, as follows: (1) In 1996, Bill Hebert had a plumbing license but performs work on boilers; (2) In 2000, Jim Lawrence had an electrical license but works on boilers; (3) In 2001, Dave performed heating work but does not have a heating license.

The following maintenance aids performed work without the proper licenses:Allen

Harrison performed electrical, plumbing and heating duties without a license; Dave Wentworth performed electrical, plumbing, heating and tile work duties with a license, his heating license expired in 2000; Eddie Desenzo performed heating, electrical and plumbing duties without a license; Don Gugliotti performed heating and plumbing duties, he has a plumbing license, but has no heating license; Bill Hebert performed heating and electrical duties without a license, his plumbing license expired in 1999; Nick Klupuko performed heating, electrical, and plumbing duties without a license; Fabian Mena performed heating, electrical and plumbing duties without a license; Bill Nixon performed electrical duties without a license; Brian Ayotte performed heating duties without a license; Ed Couva performed heating and electrical duties without a license, his plumbing license expired in 2002 and he has no electrical or heating licenses ; James Lawrence performed electrical duties without a license, his electrical license expired in 1999. (56(a)2 statement, ¶ 41.)

In June or July 1986, the plaintiff was injured while working and received workers' compensation.  In 1993, the plaintiff was charged with sick time for the 1986 injury even though he was still eligible for workers' compensation.  The plaintiff tried to have his sick time reinstated between 1994 and 1999 through numerous hearings but it was not restored.

In 1996, the plaintiff appealed a 1993 Arbitration Award.  The plaintiff was retaliated against for appealing the 1993 Arbitration Award.  The plaintiff has filed numerous grievances against the defendants for the denial of his promotion to Maintenance Mechanic.  The plaintiff filed at least thirty-five grievances between 2000 and 2001 against the Housing Authority as the Union President.  The plaintiff was retaliated against by the defendants for his membership with the Union. The plaintiff was retaliated against by the defendants for the grievances he filed

against the Housing Authority, including: (a) On February 19, 1998, Roughan filed a complaint with the Connecticut State Board of Labor Relations against the plaintiff, for the plaintiff's filing of a grievance on January 29, 1998; (b) On October 16, 1998, Roughan filed a complaint with the Connecticut State Board of Labor Relations against the plaintiff, for the plaintiff's filing of a grievance on October 9, 1998; (c) On August 27, 1999, Roughan filed a complaint with the Connecticut State Board of Labor Relations against the plaintiff, for the plaintiff's filing of a grievance on June 10, 1999 and July 26, 1999; and (d) On November 1, 2001, Counihan  filed a complaint with the Connecticut State Board of Labor Relations against the plaintiff, for the plaintiff's filing of a grievance on October 10, 2001.

Defendants have: (a) created a job qualification for the Maintenance Mechanic position and enforced the qualification as to the plaintiff, but not enforced the qualification as to other employees from 1981 through the present; (b) denied the plaintiff a promotion based on the selectively enforced qualification from 1989 through the present; and (c) refused to promote the plaintiff to Maintenance Mechanic but expected the plaintiff to perform the duties of the Maintenance Mechanic from 1978 through the present.

The plaintiff is sixty years old.  The defendants refuse to promote the plaintiff to the position of Maintenance Mechanic because of his age.  The defendants consistently have promoted younger employees with less seniority to the position of Maintenance Mechanic, including but not limited to Mike Seamon, who was hired in 1981.  Defendants have hired younger employees with less experience for the same position as the plaintiff, who has had experience in the position of Maintenance Mechanic since 1978 but has been denied promotion. These individuals include Bill Hebert (hired 1996) and Dave Wentworth (hired 2001).  Although

5

aware of these violations, the defendants permitted and approved of the above referenced age discrimination.

Plaintiff has satisfied all of the procedural and administrative requirements set forth in the ADEA in particular: (a) Plaintiff filed a timely written charge of retaliation and violation of the ADEA with the United States Equal Employment Opportunity Commission (hereinafter "EEOC"), and Connecticut Commission on Human Rights and Opportunities ("CHRO") on July 12, 2001; (b) Plaintiff received a "Notice of Right to Sue" from the EEOC on April 8, 2002; (c) Plaintiff received a "Release to Sue" from the CHRO on January 10, 2002.

The Housing Authority refuses to promote the plaintiff to Maintenance Mechanic in retaliation for his workers compensation injury. The defendants charged the plaintiff forty-five sick days for his injury that was covered by workers compensation in retaliation for his compensable injury.

Since filing this present litigation in the federal court on March 19, 2002, the plaintiff has been the target of retaliation by Arns and Madigan. On or about December 19, 2002, the plaintiff was approached by Arns in the parking lot outside of the company Christmas party. Arns proceeded to verbally and physically threaten the plaintiff about continuing to pursue legal action specifically stating, "If you take this any further you'll be sorry". On or about February 5, 2003, the plaintiff was called into the office of Terry Madigan to discuss a second step grievance. The plaintiff is allowed by his union contract to have a third party present at these meetings but his request to have his council present was denied by Madigan. The plaintiff was immediately confronted by Arns, Dumas and Madigan with questions about his pending legal action. Arns, Dumas, and Madigan became increasing hostile when the plaintiff refused to

answer any questions about his pending legal action.  Madigan then physically and verbally threatened the plaintiff.  Madigan was physically restrained to prevent him from making contact with the plaintiff.  Madigan told the plaintiff, "If you take this any further you'll be sorry," referring directly to the legal action they had been discussing.

## III.    LAW AND ARGUMENT

## A.    STANDARD FOR SUMMARY JUDGMENT

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Rule 56(c), F.R.C.P.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202, 217 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact...." Miner v. Gen. Falls, 999 F.2d 655, 661 (2d Cir. 1993)(citation omitted). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992).  After discovery, if the nonmoving party "has failed to make sufficient showing on an essential element of his case with respect to which he has the burden of proof," then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265, 273 (1986). The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich, 963 F.2d at 523. Thus "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.) cert. denied, 502 U.S. 849, 112 S.Ct.

152, 116 L.Ed.2d. 117 (1991). <u>See also</u>, <u>Suburban Propane v. Proctor Gas, Inc.,</u> 953 F.2d 780, 788 (2d Cir. 1992).

**B.    THE DEFENDANTS WERE ACTING UNDER COLOR OF LAW AND THE DEFENDANT ARE LIABLE UNDER SECTION 1983.**

To state a cause of action under § 1983, the plaintiff must show (1) that the defendants deprived him of a right "secured by the Constitution or laws of the United States"; and (2) that they did so "under color of state law." <u>Am. Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 49-50 (1999); accord <u>Snider v. Dylag</u>, 188 F.3d 51, 53 (2d Cir. 1999); <u>Dwares v. City of New York</u>, 985 F.2d 94, 98 (2d Cir. 1993).

**1.    The Defendants Were Acting Under Color of Law**

The defendants argue that they were not action under color of law. [1] It is entirely appropriate for this court to take judicial notice that defendants act under color of state law. Courts may take judicial notice of facts that are "not subject to reasonable dispute in that [they are] either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned."  Fed. R. Evid. 201(b).  A court may take judicial notice of the record in prior litigations between the parties.  <u>See, e.g., Shuttlesworth v. City of Birmingham</u>, 394 U.S. 147, 157, 22 L. Ed. 2d 162, 89 S. Ct. 935 (1969) (taking judicial notice of record in prior litigation between same parties); <u>New York ex rel. Spitzer v. Operation Rescue</u> Nat'l, 273 F.3d 184, 199 (2d Cir. 2001) (taking judicial notice of district court's decision in related proceeding); <u>Jacques v. United States R.R. Retirement Bd.</u>, 736 F.2d 34, 40 (2d Cir. 1984) (taking judicial notice of

---

[1] This criticism by defendant is based solely on plaintiff's complaint and in that regard is more akin to a 12(b)(6) motion than a motion for summary judgment.

official court record in related case of inferior court in same jurisdiction).

In the CHRO proceeding on this matter the EHHA admitted that it was the Housing Authority of the Town of East Hartford.  (56(a) 2 statement, ¶ 1.)  Furthermore it admitted that it "is a quasi-governmental agency existing and authorized to act pursuant to the provision of Chapter 128 of the Connecticut General Statutes."     (56(a) 2 statement, ¶ 2.)

As the individual defendants are all employees of the EHHA, and all of the allegations against them are directed toward their actions as employees of the EHHA the individual defendants, like the EHHA act under color of law.   The EHHA and its employees undisputably act under color of law.

**2.    Defendants Misconstrue the Pleading Requirements for a § 1983 Claim.**

Defendant attempts to convince this court that there is a heightened pleading requirement required to establish liability under § 1983.[2]  This is patently incorrect as the Supreme Court has made clear both in <u>Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 113 S. Ct. 1160 (1993) and  <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 512, 122 S. Ct. 992 (2002).

In <u>Leatherman</u> the Supreme Court held that a federal court may not apply a "heightened pleading standard" -- more stringent than the usual pleading requirements of Federal Rule of Civil Procedure 8(a) -- in civil rights cases under § 1983. <u>Leatherman</u>, 113 S. Ct. at 1163.

The Supreme Court specifically rejected the argument that, to establish municipality liability under section 1983, 'a plaintiff must do more than plead a single instance of

---

[2]This arguments by defendants is based solely on plaintiff's complaint and in that regard is more akin to a 12(b)(6) motion than a motion for summary judgment.

misconduct.' Instead the Court suggested that 'federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later.'

Javid v. Scott, 913 F. Supp. 223, 231 (S.D.N.Y. 1996) (finding plaintiff's allegation that it was a policy of the municipal defendant to improperly and inadequately train and instruct the members of the police department, including the police officer defendant, in the proper manner of effectuating an arrest and in the proper exercise of self-restraint in the use of violence against civilians and persons being apprehended, sufficient to withstand a motion to dismiss) (quoting Leatherman, 113 S. Ct. at 1162-63.)  Under Leatherman, a court can not dismiss plaintiffs' claim on the ground that plaintiffs must do more than plead a single instance of misconduct. Javid v. Scott, 913 F. Supp. 223, 231 (S.D.N.Y. 1996).

"[A] complaint need only meet the requirements of our 'simplified notice pleading standard [which] relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Marinoff v. City College of N.Y., 63 Fed. Appx. 530, 531 (2d Cir. 2003) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 152 L. Ed. 2d 1, 122 S. Ct. 992 (2002)). Given the notice pleading standard, "a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkieicz, 534 U.S. at 513-14 (citations and internal quotation marks omitted); see also Bish v. Aquarion Servs. Co., 2003 U.S. Dist. LEXIS 18846, *14-15 (D. Conn. 2003).

The Second Circuit has repudiated Dawes v. Walker, 239 F.3d 489 (2d Cir. 2001) and Alfaro Motors, Inc. v. Ward, 814 F.2d 883 (2d Cir. 1987) for the proposition that defendants cite them for.  See Phelps v. Kapnolas, 308 F.3d 180, 187 (2d Cir. 2002) ("To the extent Dawes did

create a heightened pleading standard beyond FRCP 8(a)(2), that case is inconsistent with, and thus overruled by, Swierkiewicz, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002).").

> C. **THE PLAINTIFF HAS ESTABLISHED A CLAIM OF FIRST AMENDMENT RETALIATION.**

To prevail on such a § 1983 claim, the plaintiff must prove, inter alia, that the defendant caused the deprivation of his or her rights. See Monell v. Department of Social Servs., 436 U.S. 658, 692, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978). To prevail on a First Amendment retaliation claim the plaintiff must establish: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Garcia v. S.U.N.Y. Health Sciences Center, 280 F.3d 98 (2nd Cir. 2001). Plaintiff has sufficiently alleged retaliation for First Amendment activity.

> 1. **Plaintiff's Speech and Conduct is Constitutionally Protected**.

The First Amendment protects the right of public employees to join together in a union, to seek redress for grievances through that collective entity, and to be free from retaliation for engaging in such activities. Smith v. Arkansas State Highway Employees, 441 U.S. 463, 464-65, 60 L. Ed. 2d 360, 99 S. Ct. 1826 (1979). The Second Circuit has held that, "there is no doubt that retaliation against public employees solely for their union activities violates the First Amendment." Clue v. Johnson, 179 F.3d 57, 60 (2d Cir. 1999).

Whether speech addresses a matter of public concern is determined "by the content, form, and context of a given statement, as revealed by the whole record." Connick v. Myers, 461 U.S. 138, 147-48 (1983). "To fall within the realm of public concern, moreover, an employee's

speech must 'relate to a ... matter of political, social, or other concern to the community.'"
Locurto v. Giuliani, 269 F. Supp. 2d 368, 385 (2d Cir. 2003) (quoting Connick v. Myers, 461
U.S. 138, 146 (1983)).

Though a public employee's speech is constitutionally protected only when it can "be
fairly characterized as constituting . . . a matter of public concern," Morris, 196 F.3d at 110
(quoting Connick, 461 U.S. at 140). Even if the "public concern" requirement were to apply to
claims of freedom of association, union activity is always a matter of public concern. See Clue
v. Johnson, 179 F.3d 57, 61 (2d Cir. 1999) (" retaliation solely for union activity clearly raises a
public concern under Connick"). Likewise, the "filing of grievances and reporting of the Town
to OSHA involve matters of public concern and are therefore protected speech." Morris v.
Lindau, 196 F.3d 102, 113 (2d Cir. 1999).

Plaintiff filed numerous grievances against the EHHA over a number of years, and is a
member of the union. (56(a)2 statement, ¶¶ 3,4.) Some of the grievances were filed by Plaintiff
on behalf of other union members in the plaintiff's capacity as union president. (56(a)2
statement, ¶ 4.) Plaintiff filed grievances concerning the improper removal of asbestos from the
EHHA's tenants' residences. (56(a)2 statement, ¶¶ 5-8.) Plaintiff filed a grievance concerning
the improper sanding of floors in tenants' residences. (56(a)2 statement, ¶ 9.) Plaintiff reported
a frozen sprinkler pipe to the EHHA, which was disregarded and caused substantial damage
when the pipe burst. (56(a)2 statement, ¶ 10.) Plaintiff also filed grievances regarding: the
EHHA issuance of checks to its employees without there being sufficient funds in the EHHA's
checking account to cover the checks; and the EHHA's failure to pay union members overtime
pay for travel time as required in the collective bargaining agreement and Conn. Gen. Stat. 31-

76b.  (56(a)2 statement, ¶ 4.)

Plaintiff complained to OSHA of the EHHA's improper removal of asbestos.  (56(a)2 statement, ¶¶ 5-8.)  Plaintiff also complained to OSHA of the EHHA's improper use of sanding equipment creating hazardous breathing environments.  (56(a)2 statement, ¶ 9.)

The filing of grievances and complaints with OSHA are protected speech; and union membership is a protected form of speech.  Plaintiff has put forth evidence demonstrating that the speech or conduct at issue is protected; thus satisfying the first element.

### 2.    Defendants Have Taken Adverse Action Against Plaintiff for His Speech.

"Adverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand. . . .lesser actions may meet the adversity threshold, but we have not explicitly defined what quantum of lesser actions constitutes an adverse employment action."  Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2002). Defendants admit in its own memorandum that "a reduction in pay is a retaliatory act."  (Defendants' Memorandum in Support of Motion to Dismiss p. 8.)  The Supreme Court has stated that the First Amendment "protects state employees not only from patronage dismissals but also from even an act of retaliation as trivial as failing to hold a birthday party for a public employee . . . when intended to punish her from exercising her free speech rights."  Rutan, 497 U.S. 62, 75 n.8 (1990).

Since the Rutan decision, the Second Circuit "allows a combination of seemingly minor incidents to form the basis of a constitutional retaliation claim once they reach a critical mass." Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2002).

Plaintiff has suffered numerous retaliatory acts. Plaintiff has been denied numerous promotions to Maintenance Mechanic (56(a)2 statement, ¶ 13). Defendant Roughn, refused to meet with the plaintiff (56(a)2 statement, ¶ 21). In 1993 Plaintiff was charged sick time even though he was still eligible for workers' compensation. (56(a)2 statement, ¶¶ 26-27.) After wrangling with defendants to restore plaintiff's sick time, the EHHA agreed to restore some of the sick time in an agreement with plaintiff in 1994. (56(a)2 statement, ¶ 28). However, the EHHA did not restore plaintiff's sick time in 1994. Plaintiff continued to pursue the restoration of his sick time and was only credited with the time in 1998. (56(a)2 statement, ¶ 28.) Plaintiff has put forth evidence demonstrating that the defendant took adverse action against the plaintiff; thus satisfying the second element.

### 3.    A Causal Connection Exists.

To establish a causal connection, the courts look to whether there is an inference that defendants had a retaliatory motive. Morales v. Mackalm, 278 F.3d 126 (2d Cir. 2002). "The causal connection must be sufficient to support the inference 'that the speech played a substantial part' [in the adverse action]." Dawes, supra, 239 at 492, quoting Ezekwo v. NYC Health & Hosp. Corp., 940 F.2d 775, 780-91 (2d Cir. 1991).

In the present case, Plaintiff has advanced all the necessary allegations establishing: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.

Plaintiff has suffered numerous retaliatory acts. Plaintiff has been denied a promotion to Maintenance Mechanic because of his Union activity and because he has filed grievances

14

(56(a)2 statement, ¶ 40); defendant Roughn, refused to meet with the plaintiff because he was the Union president (56(a)2 statement, ¶ 21); plaintiff has been charged sick time even though he was still eligible for workers' compensation, and even though the EHHA had agreed to credit plaintiff with sick time (56(a)2 statement, ¶¶ 26-28.); plaintiff has been issued wages from the EHHA in the form of checks which could not be cashed due to insufficient funds (56(a)2 statement, ¶ 4); and the EHHA has refused to pay plaintiff overtime pay for travel time as required in the collective bargaining agreement and Conn. Gen. Stat. 31-76b.   (56(a)2 statement, ¶ 4.)  Plaintiff has put forth evidence demonstrating that the defendant took adverse action against the plaintiff in retaliation for his protected speech and union membership.

**D.     NONE OF PLAINTIFF'S CLAIMS ARE BARRED BY THE ELEVENTH AMENDMENT**

The allegations in plaintiff's complaint are not prevented by the Eleventh Amendment. In its long-standing exception to Eleventh Amendment sovereign immunity, Ex parte Young "permits federal courts to enjoin state officials to conform their conduct to requirements of federal law, notwithstanding a direct and substantial impact on the state treasury." Milliken v. Bradley, 433 U.S. 267, 289 (1977); see also Alden v. Maine, 527 U.S. 706, 756-57 (1999) (providing extensive discussion of Eleventh Amendment immunity, but noting that it "does not bar certain actions against state officers for injunctive or declaratory relief").  The state's immunity is not shared by state officers to the extent that a suit seeks prospective injunctive or declaratory relief or seeks damages from the officers in their individual capacities. Ex parte Young, 209 U.S. 123, 159 (1908); see Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635 (2002); Edelman v. Jordan, 415 U.S. 651, 664 (1974); Ying Jing Gan v. City of New York,

996 F.2d 522, 529-30 (2d Cir. 1993).

While a suit for injunctive relief may be prosecuted against a state officer in his *official capacity*, "a suit for money damages may be prosecuted against a state officer in his *individual capacity* for unconstitutional or wrongful conduct fairly attributable to the officer himself, so long as the relief is sought . . . from the officer personally." Alden v. Maine, 527 U.S. 706, 757 (1999) (emphasis added).

The law cited by the defendants is misapplied. The defendants in this case are municipal defendants. Municipal entities and their officials are persons subject to suit for injunctive and declaratory relief and compensatory damages under Section 1983. Monell v. Department of Social Services, 436 U.S. 658 (1978). The defendants' citation to Will v. Michigan Dept. of State Police 491 U.S. 58, 66, 109 St. Ct. 2304 (1989), is also misplaced because Will held that states, state agencies and state officials sued officially are not "persons" under Section 1983. However, Will, held that such states defendants, when sued for injunctive relief are considered a person under Section 1983. Additionally, state officials sued for damages in their individual capacity are "persons" under Section 1983. Hafer v. Melo, 502 U.S. 21 (1991). First, the defendants are municipal defendants not state defendants. Secondly, the plaintiff sued the defendants in their individual and official capacity for injunctive relief as well as punitive damages, compensatory damages and attorney's fees under Section 1983, *inter alia*. Therefore, the defendants' Motion for Summary Judgment should be denied as to this issue as the defendants were acting under color of law and were state actors.

**E.     PLAINTIFF'S FOURTEENTH AMENDMENT CLAIMS IN COUNT TWO ARE SUFFICIENT TO WITHSTAND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.**

**1.     The plaintiff was treated differently than those similarly situated.**

The plaintiff alleges an equal protection violation based upon selective enforcement. In order to establish an equal protection violation under the Fourteenth Amendment based upon selective enforcement, plaintiff must prove that (1) in comparison with others similarly situated, he was selectively treated, and (2) such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 16 (2d Cir.1999) .

On a number of occasions the defendants have refused to promote plaintiff to the position of Maintenance Mechanic claiming that he is not "qualified."   Defendants have done this in spite of the fact that plaintiff was the most senior applicant for the position.  (56(a)2 statement, ¶¶ 13,17.)  Not only was plaintiff the most senior applicant for the job, but he actually performed all of the duties required of a Maintenance Mechanic under the title of Maintenance Aid.(56(a)2 statement, ¶ 18.)  However, defendants have selectively enforced the licensing "requirement" in order to deny plaintiff a promotion.  Since the EHHA began "requiring" licenses from its Maintenance Mechanics for the duties they perform, numerous Maintenance Mechanics have been hired who do not hold the appropriate license for the work they perform.  (56(a)2 statement, ¶¶ 15, 19, 20.)  Additionally, numerous other Maintenance Aids have performed Maintenance Mechanics duties without the required license.  (56(a)2 statement, ¶ 41.)  Some of those hired without proper licensing include Bill Hebert, hired in 1996, Jim Lawrence, hired in 2000 and Dave Wentworth, hired in 2001.   (56(a)2 statement, ¶ 19.)

17

Plaintiff was performing the duties of a Maintenance Mechanic, he was the most senior employee to apply for the positions, and was denied the positions under the guise of being "unqualified" while other employees equally as "unqualified" were given the positions.

For these reasons plaintiff clearly had a property interest in the promotions.

**2.     Defendants' actions shock the conscience, Thus Sustaining a Substantive Due Process Claim.**

A claim for a substantive due process violation must "shock the conscience." <u>Rochin v. California</u>, 342 U.S. 165, 172 (1952). "[T]he Due Process Clause of the Fourteenth Amendment was intended to prevent government 'from abusing [its] power, or employing it as an instrument of oppression.'" <u>De Shaney v. Winnebago County Dept. of Social Services</u>, 489 U.S.189, 196 (1989) quoting <u>Davidson v. Cannon</u>, 474 U.S. 344, 348 (1986.  Actions violate the substantive component of the Due Process Clause only when they "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." <u>Collins v. Harker Heights</u>, 503 U.S. 115, 128 (1992); <u>see</u> <u>also</u> <u>County of Sacremento v. Lewis</u>,  523 U.S. 833 (1998).  Actions intended to injure in some way and unjustifiable by any government interest will most likely be found conscience-shocking.  <u>Id</u>.  This is a fact-specific inquiry that requires a case by case analysis.

Understanding that actions which would shock the conscience in one set of circumstances could be considered completely rational in another set of circumstances, the Supreme Court has established that the "deliberate indifference" standard will determine if an official's actions "shock the conscience." <u>Sacramento v. Lewis</u>,  523 U.S. at 850-51; <u>see</u> <u>also</u> <u>Betts v. Brady</u>, 316 U.S. 455, 462 (1942).  Inherent to the word "deliberate" is the idea that the actor must contemplate her actions within a given time frame; split-second decisions that result in harm are

not equal to those actions that are considered and implemented over a longer period of time. Pre-meditated actions are decidedly more egregious and therefore often rise to the level of constitutional violation.  Id.

A government official shocks the conscience and violates one's substantive due process rights when, given the opportunity to deliberate and decide upon a course of action that would intentionally harm an individual, that official carries through with such actions.  Daniels v. Williams, 474 U.S. 327,331, 106 S.Ct. 662 (1986).  The protections of substantive due process are applicable in the employment context.  See, e.g., Oppenheim v. Gutteridge, 225 F. Supp. 2d 185, 188 (D. Conn. 2002) (analyzing employee's claim of violation of substantive due process, however, finding no violation).

Defendants have created job qualifications for the Maintenance Mechanic position and enforced those qualifications as to plaintiff, but not as to other similarly situated persons. (56(a)2 statement, ¶¶ 19, 20.)   Defendants have deliberately refused to promote plaintiff despite requiring plaintiff to perform all of the duties of the position.  (56(a)2 statement, ¶¶ 19, 20, 24, 30, 40.)  Defendants have kept plaintiff from this position in retaliation for his filing of complaints against the defendants.  (56(a)2 statement, ¶ 40.)   Defendants actions demonstrate their deliberate indifference to plaintiff's substantive due process rights.

### 3.    The plaintiff Has Established a Due Process Claim.

"[T]o establish a violation of either substantive or procedural due process, plaintiff must initially show that [he] was deprived of a property or liberty interest."  Gordon v. Nicoletti, 84 F.

19

Supp.2d 304, 309 (D. Conn. 2000).[3]  In many circumstances a state employee may have a

property interest in continued employment or a promotion.  See, e.g., Harhay v. Town of

Ellington Bd. of Educ., 323 F.3d 206, 212 (2d Cir. 2003) (finding contractual right to

reappointment under a collective bargaining agreement to be an important interest as opposed to

a trivial and insubstantial interest, and therefore a property interest); Ezekwo v. NYC Health &

Hosp. Corp., 940 F.2d 775, 783 (2d Cir. 1991) (finding a contractual right of promotion to the

position of Chief Resident in a public hospital was found to constitute a significant property

interest that would be protected under state law); Board of Regents of State Colleges v. Roth,

408 U.S. 564, 576, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972) (discussing property interests in

public employment created by tenure provisions or employment contracts); Schwartz v.

Thompson, 497 F.2d 430, 433 (2d Cir. 1974) (indicating that a property interest in a promotion

may exist where, for example, the promotion is tied solely to seniority or other objective

criteria).

Section 4.3 of the collective bargaining agreement between plaintiff's union and the

EHHA states, "[w]hen a vacancy exists or a new position is created, the employee with the

highest seniority shall be given the first opportunity to fill the position provided he is qualified."

(56(a)2 statement, ¶ 12.)

On a number of occasions the defendants have refused to promote plaintiff to the position

of Maintenance Mechanic claiming that he is not "qualified."   Defendants have done this in

spite of the fact that plaintiff was the most senior applicant for the position.  (56(a)2 statement,

_____

[3]Again Plaintiff asks this court to take judicial notice of the fact that the EHHA are state actors acting under color of law as discussed above.

¶¶ 13,17.)  Not only was plaintiff the most senior applicant for the job, but he actually performed all of the duties required of a Maintenance Mechanic under the title of Maintenance Aid.(56(a)2 statement, ¶ 18.)  The plaintiff has been deprived his due process rights.

**F.      PLAINTIFF HAS ESTABLISHED A CLAIM FOR AGE DISCRIMINATION UNDER THE ADEA IN COUNT FOUR.**

        While the United States Supreme Court has not squarely addressed whether the evidentiary framework developed in <u>McDonnell Douglas Corp. v Green,</u> 411 US 792, 36 L Ed 2d 668 (1973), and subsequent decisions, for discriminatory-treatment claims under Title VII applies to discriminatory-treatment actions under ADEA the court has assumed that the Title VII framework applied to ADEA cases. . <u>Reeves v Sanderson Plumbing Prods., Inc</u>., 530 US 133, 147 L Ed 2d 105 (2000).

        The Supreme Court set forth a three-step allocation of evidentiary burdens of the parties in a Title VII case where discriminatory treatment is alleged. The Court stated "The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of . . . discrimination. . .The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection.. . .Respondent must [then] be afforded a fair opportunity to show that petitioner's stated reason for respondent's rejection was in fact pretext." <u>McDonnell-Douglas Corp.</u>, 411 U.S. 802-04.

        "[T]he complainant's initial burden of establishing a prima facie case is not onerous." <u>Sweeney v. Research Found. of State Univ</u>., 711 F.2d 1179, 1185 (2d Cir. 1983) (citing <u>United States Postal Service Board of Governors v. Aikens</u>, 460 U.S. 711, 103 S. Ct. 1478, (1983)). Under the ADEA to establish a prima facie claim of discrimination the plaintiff must offer

evidence (1) that he belongs to a protected class; (2) that he applied for, and was qualified for, a position for which his employer was seeking applicants; (3) that despite his qualification, he was rejected; and (4) that, after his rejection, the position remained open and thereafter was filled by a younger employee.  See Sweeney v. Research Found. of State Univ., 711 F.2d 1179, 1185 (2d Cir. 1983); see also McDonnell-Douglas, 411 U.S. at 802.

Plaintiff is 60 years old and thus falls within the protected class.  (56(a)2 statement, ¶ 22.) Plaintiff applied for the position of Maintenance Mechanic and was rejected.  (56(a)2 statement, ¶ 13.)  After plaintiff's rejections younger employees were hired.  (56(a)2 statement, ¶ 23.) Plaintiff was qualified for the position as evidenced by his duties at the EHHA which required that he perform all of the duties of a Maintenance Mechanic.  (56(a)2 statement, ¶ 24.) Defendants selectively enforced the licensing requirement in a manner intended to discriminate against plaintiff and keep him from becoming a Maintenance Mechanic.  (56(a)2 statement, ¶¶ 19-20.) If defendants had enacted the licensing requirement and enforced it uniformly it would be a valid requirement seeking to protect the safety of the residents of the EHHA; however, defendants selectively enforced the requirement deliberately in order to keep plaintiff from the position while allowing other younger employees with improper licenses to receive the promotions.

## G.    PLAINTIFF HAS ESTABLISHED A CLAIM UNDER CFEPA IN COUNT FIVE.

The Same legal standards apply to claims under CFEPA as to claims under the ADEA.

22

Craine v. Trinity College, 259 Conn. 625, 637, n.6, 791 A.2d 518 (2002).  Therefore, Plaintiff

has set forth a valid claim under CFEPA as stated above.

**H.     PLAINTIFF'S CLAIM  IN COUNT SIX OF DISCRIMINATION BASED UPON HIS FILING FOR WORKERS' COMPENSATION BENEFITS IS SUFFICIENT TO WITHSTAND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.**

Plaintiff's allegations of a violation of Conn. Gen. Stat. § 31-290a are sufficient to

withstand defendants' summary judgment motion.  Section 31-290a prohibits employer's from

discriminating against employees who file claims for workers' compensation benefits.  Conn.

Gen. Stat. § 31-290a.  Plaintiff has met the initial burden of establishing a prima facie case of

discrimination as required by Ford v. Blue Cross & Blue Shield of Connecticut Inc., 216 Conn.

40, 53-54 (1990).

In 1986, the Plaintiff suffered a compensable injury which was covered by the

Connecticut Workers Compensation Act. (56(a)2 statement, ¶ 25.)  In 1993, plaintiff was

charged with sick time for a 1986 injury even though he was still eligible for workers'

compensation. (56(a)2 statement, ¶ 26.)  The defendants have charged Plaintiff forty-five sick

days for this injury even though it was covered by workers compensation. (56(a)2 statement, ¶

27.)  Plaintiff tried to have his sick time reinstated through numerous hearings and was only able

to reach an agreement with EHHA's compensation carrier in 1994; However, after this

agreement was made,  EHHA still refused to adjust plaintiffs's time record until 1998, almost

five years after the . (56(a)2 statement, ¶ 28.)  Since receiving this injury, the Housing Authority

has refused to promote Plaintiff to Maintenance Mechanic. (56(a)2 statement, ¶ 29.)  The acts

and conduct of the defendants' in charging Plaintiff for sick days and in not promoting him to

Maintenance Mechanic were intentional and willful. (56(a)2 statement, ¶ 30.)

Because there are material facts in dispute summary judgment is not appropriate for Count Six of Plaintiff's complaint.

I.      **PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM IN COUNT SEVEN IS SUFFICIENT TO WITHSTAND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.**

Defendants claim plaintiff fails to sufficiently allege extreme and outrageous conduct, and therefore Count Seven of Plaintiff's complaint fails.  (Mem. Supp. Sum. Judg. 17-19); see Petyan v. Ellis, 200 Conn. 243, 253, 510 A.2d 1337 )(1986).  Plaintiff, however, alleges more than a conclusory statement alleging outrageous conduct.

Plaintiff has suffered numerous retaliatory acts.  Plaintiff has been denied numerous promotions to Maintenance Mechanic (56(a)2 statement, ¶ 13).  Defendant Roughn, refused to meet with the plaintiff (56(a)2 statement, ¶ 21).  In 1993 Plaintiff was charged sick time even though he was still eligible for workers' compensation.  (56(a)2 statement, ¶¶ 26-27.)  After fighting with defendants to restore plaintiff's sick time, the EHHA agreed to restore some of the sick time in an agreement with plaintiff in 1994.  (56(a)2 statement, ¶ 28).  However, the EHHA did not restore plaintiff's sick time in 1994.  Plaintiff continued to pursue the restoration of his sick time and was only credited with the time in 1998.  (56(a)2 statement, ¶ 28.)

Since the filing of the original complaint in this case plaintiff was approached by defendant Arns in the parking lot outside of the company Christmas party.  (56(a)2 statement, ¶ 31.) Arns proceeded to verbally and physically threaten the plaintiff about continuing to pursue legal action specifically stating, "If you take this any further you'll be sorry."  (56(a)2 statement, ¶ 32.) On or about February 5, 2003, the plaintiff was called into the office of defendant Terry

Madigan ("Madigan") to discuss a second step grievance.  (56(a)2 statement, ¶ 33.) The plaintiff is allowed by his union contract to have a third party present at these meetings but his request to have his council present was denied by Madigan.  (56(a)2 statement, ¶ 34.) The plaintiff was immediately confronted by defendants Andre Dumas ("Dumas"), Arns and Madigan with questions about his pending legal action.  (56(a)2 statement, ¶ 35.) Arns, Dumas, and Madigan became increasing hostile when the plaintiff refused to answer any questions about his pending legal action..  (56(a)2 statement, ¶ 36.) Madigan then physically and verbally threatened the plaintiff.  (56(a)2 statement, ¶ 37.)   Madigan was physically restrained to prevent him from making contact with the plaintiff.  (56(a)2 statement, ¶ 38.) Madigan told the plaintiff, "If you take this any further you'll be sorry," referring directly to the legal action they had been discussing.  (56(a)2 statement, ¶ 39.)

Taken as a whole the actions by the defendants constitute extreme and outrageous conduct, making summary judgment inappropriate.

**J.    PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE DOCTRINES OF *RES JUDICATA*, COLLATERAL ESTOPPEL, OR ROOKER-FELDMAN.**

"To determine the effect of a state court judgment, federal courts, including those sitting in diversity, are required to apply the preclusion law of the rendering state." Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 87 (2d Cir. 2000).

In determining whether to apply the doctrine of res judicata or collateral estoppel the Connecticut Supreme Court has observed that the decision "should be made based upon a consideration of the doctrine's underlying policies, namely, the interests of the defendant and of

the courts in bringing litigation to a close . . . and the competing interest of the plaintiff in the vindication of a just claim. . . . These [underlying] purposes are generally identified as being (1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation. . . . The judicial doctrines of res judicata and collateral estoppel are based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate. . . . Stability in judgments grants to parties and others the certainty in the management of their affairs which results when a controversy is finally laid to rest." (Citation omitted; internal quotation marks omitted.)  Isaac v. Truck Service, Inc., 253 Conn. 416, 422-23, 752 A.2d 509 (2000).

"The doctrines of preclusion . . . should be flexible and must give way when their mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies." (Internal quotation marks omitted.) Isaac v. Truck Service, Inc., supra, 253 Conn. at 423.

### 1.    Plaintiff's Claims are Not barred by the Doctrine of Res Judicata.

 "[A] valid, final judgment rendered on the merits by a court of competent  jurisdiction is an absolute bar to a subsequent action between the same parties, or those in privity with them, upon the same claim or demand. Furthermore, the doctrine of claim preclusion . . . bars not only subsequent relitigation of a claim previously asserted, but subsequent relitigation of any claims relating to the same cause of action which were actually made or which might have been made." (internal quotations and citations omitted.)  Isaac v. Truck Service, Inc., 253 Conn. 416, 420-21, 752 A.2d 509, (2000);  See Connecticut Nat'l Bank v. Rytman, 241 Conn. 24, 43-44, 694 A.2d

26

1246, 1256 (1997).

In 1993 The Connecticut Supreme Court held that courts can not give preclusive effect to the unconfirmed determinations of arbitrators, acting pursuant to a collective bargaining agreement, with respect to state constitutional and statutory claims and federal constitutional claims.  <u>Genovese v. Gallo Wine Merchants, Inc</u>., 226 Conn. 475 (1993).  Genovese left the question open as to whether confirmed determinations of arbitrators should be given preclusive effect.

In 2001, the Second Circuit answered this question in the negative holding that Connecticut courts would not afford preclusive effect to state court judgment confirming arbitration award in subsequent § 1983 action <u>See Fayer v. Town of Middlebury</u>, 258 F.3d 117, 125-26 (2d Cir. 2001).

Plaintiff and his union filed a grievance against the EHHA which was arbitrated before the State Labor Board.  (Def. Local Rules Statement,  ¶ 10).   Plaintiff's present Complaint involves different parties than those in the State Labor Board action.  (Complaint, First Count,  ¶ 2-4, Third Count,  ¶ 54, Eight Count, ¶  1-2).  Furthermore, in § 1983 claims no privity exists between the town and the individual defendants.

> In an action against a municipality under § 1983, the plaintiff must plead and prove "that the [municipality] . . . implemented an unlawful practice or policy which subjected plaintiff to the alleged deprivation of his rights." (def. mem. at 9). In contrast, a § 1983 action against an individual official can rest upon a single deprivation of constitutional rights. <u>See Williams v. Vincent</u>, 508 F.2d 541 (2d Cir. 1974). Because the issues in a § 1983 claim against a municipality and a § 1983 claim against an individual are not the same, individual defendants and municipalities are not necessarily in privity although the claims might involve common facts. . . . Indeed, if defendants' privity argument is applicable to § 1983 actions, then a plaintiff could sue individual public officials for a single constitutional violation and then recover the judgment against the municipality since

it would be bound by the judgment against the officials. This is certainly not the case. Therefore, the court finds that [plaintiff's] claims against [defendants] are not barred by res judicata.

Lopez v. Ward, 681 F. Supp. 192, 199 (S.D.N.Y. 1988). ReSource N.E. of Long Island, Inc. v. Town of Babylon, 80 F. Supp. 2d 52, 64 (E.D.N.Y. 2000) (upholding district court's finding that no privity existed, and therefore doctrine of res judicata was inapplicable, between the town defendant and the individual defendants for purposes of a § 1983 claim.).

Because the individual defendants were not parties to the arbitration before the State Labor Board, (Def. Local Rules Statement, ¶ 10), and because there exists no privity between the East Hartford Housing Authority and the individual defendants the doctrine of res judicata does not preclude any of plaintiff's claims against the individual defendants.

Furthermore, the Board of Labor Relations may only hear claims of violations of the state's labor relations code; see Conn. Gen. Stat. § 7-471(5); Fayer v. Town of Middlebury, 258 F.3d 117, 125 n.5 (2d Cir. 2001), and, therefore, plaintiff could not have joined his § 1983 claims to the unfair labor practices complaints that he filed with the State Labor Board.; see Conn. Gen. Stat. § 7-471(5); Fayer v. Town of Middlebury, 258 F.3d 117, 125 n.5 (2d Cir. 2001),

Although the Superior Court upheld the State Labor Board's decision, (Def. Local Rules Statement, ¶ 17), there is neither issue nor claim preclusion because, as the Second Circuit has stated, since Connecticut courts have limited jurisdiction in confirming, vacating, or modifying arbitration awards, the fact that an arbitrator's decision has been confirmed will not preclude the district court from hearing a plaintiff's related § 1983 claims. See Fayer v. Town of Middlebury, 258 F.3d 117, 124-26 (2d Cir. 2001).

### 2.    Plaintiff's Claims are Not Barred by the Doctrine of Collateral Estoppel

Defendants' claims that the doctrine of collateral estoppel precludes plaintiffs claims is patently meritless.  The fundamental principles underlying the doctrine of collateral estoppel are well established.  "'The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality. . . . Collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. . . . Issue preclusion arises when an issue is actually litigated and determined by a valid and final judgment, and that determination is essential to the judgment. . . . Collateral estoppel expresses no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest.'"  (Citations omitted; internal quotation marks omitted.) Cumberland Farms v. Town of Groton, 262 Conn. 45, 58 (2002) (quoting Gladysz v. Planning & Zoning Commission, 256 Conn. 249, 260, 773 A.2d 300 (2001)).

"'An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . . . If an issue has been determined, but the judgment is not dependent upon the determination of that issue, the parties may relitigate the issue in a subsequent action. Findings on nonessential issues usually have the characteristics of dicta.'"  (Citations omitted; emphasis in original; internal quotation marks omitted.)  Cumberland Farms v. Town of Groton, 262 Conn. 45, 58, n.17 (2002) (quoting Dowling v. Finley Associates, Inc., 248 Conn. 364, 373-74, 727 A.2d 1245

(1999)).

Plaintiff did not, and could not have joined his § 1983 claims in his arbitration in front of the Labor Board.; see Conn. Gen. Stat. § 7-471(5); Fayer v. Town of Middlebury, 258 F.3d 117, 125 n.5 (2d Cir. 2001). Not a single Count in Plaintiff's Complaint was adjudicated by the State Labor Board. (Def. Local Rules Statement, ¶ 10). Even if any and all of the Counts had been adjudicated by the State Labor Board, and then confirmed by the Connecticut Superior Court, there is no preclusive effect on plaintiff's current lawsuit as explained by Genovese v. Gallo Wine Merchants, Inc., 226 Conn. 475 (1993) and Fayer v. Town of Middlebury, 258 F.3d 117, 125-26 (2d Cir. 2001).

**3.        Plaintiff's Claims are Not Barred by the Doctrine of Rooker-Feldman**

As stated above the doctrine of Rooker-Feldman is not applicable. See Genovese v. Gallo Wine Merchants, Inc., 226 Conn. 475 (1993); Fayer v. Town of Middlebury, 258 F.3d 117, 125-26 (2d Cir. 2001).

**CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment against Counts One, Two, Four, Five, Six, Seven and Eight of Plaintiff's complaint should be denied.

30

CARMELO GAGLIARDI,

 THE PLAINTIFF


BY: _____

                    Erin O'Neil

                    Brewer & O'Neil, P.C.

                    818 Farmington Avenue

                    West Hartford, CT 06119

                    (860)523-4055

                    Federal Bar #ct 23073

## **CERTIFICATION**

This hereby certifies that a copy of the foregoing has been forwarded on April 19, 2004 of record:


Kevin Coles, Esq.

Coles, Baldwin & Craft, LLC

1261 Post Road

P.O. Box 577

Fairfield, CT 06430


J. William Gagne, Esq.

J. William Gagne & Associates

1260 Silas Deane Highway

Wethersfield, CT  06109


Clerk

United States District Court

District of Connecticut

141 Church Street

New Haven, CT 06510


_____

Erin I. O'Neil Esq.