**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CARMELO GAGLIARDI, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:02CV478 (EBB) |
| vs. | : | |
| | : | |
| THE EAST HARTFORD HOUSING | : | |
| AUTHORITY, and in their individual | : | |
| official capacities ANDRE DUMAS, JOHN | : | |
| ROGHN, ROBERT COUNIHAN, | : | |
| JEFF ARNS, TERRY MADIGAN and | : | |
| ROBERT LINDBERK, | : | |
| Defendants. | : | APRIL 19, 2004 |

**LOCAL RULE 56(a)2 STATEMENT IN OPPOSITION TO**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56(a)2 of the Local Rules of Civil Procedure, Plaintiff Carmelo

Gagliardi ("Plaintiff") hereby submits his statement of material facts as to which it is contended

there is a genuine issue to be tried.:

1.    The defendant, the East Hartford Housing Authority identifies itself as the Housing

Authority of the Town of East Hartford.  (Exhibit A, ¶ 1.)

2.    The defendant, the East Hartford Housing Authority identifies itself as  "a quasi-

governmental agency existing and authorized to act pursuant to the provision of Chapter

128 of the Connecticut General Statutes."   (Exhibit A, ¶ 3.)

3.    Plaintiff is a member of UNION-Local 1303-353 ("union"); and was president of the

union in 2000.  (Exhibit B, ¶¶ 2, 9.)

4.    Plaintiff filed numerous grievances against the EHHA over a number of years, both on

his own behalf and on behalf of other union members in his capacity as union president,

specifically:

12/12/01 - Union grievance filed on behalf of Union employee Brian Ayotte for Andre

Dumas' allocation of overtime to two employees not on the overtime On-call

Aide list, instead of Ayotte who was on the list (Exhibit Y1);

12/12/01 - Union grievance filed on behalf of Union employee Bill Herbert for

contractual violation by the answering service in placing a work order and

cancelling without just compensation (Exhibit Y2).

11/27/01 - Union grievance filed on behalf of all Union members regarding contractual

violations as per advance notification of leave requests (Exhibit Y3);

11/27/01 - Union grievance filed on behalf of Union employee Brian Ayotte for failure of

management to allocate vacation days according to seniority (Exhibit Y4);

11/07/01 - Union grievance filed on behalf of Union employee Barry Nixon for unfair

treatment by management in refusing to allocate overtime to union officer

(Exhibit Y5);

11/07/01 - Union grievance filed on behalf of Union employee Fabian Mena for

allocation of overtime to employees not on the overtime On-call list (Exhibit Y6);

11/5/01 - Union grievance filed on behalf of all Union members regarding exclusion of

employees from working scheduled overtime (Exhibit Y7);

11/5/01 - Union grievance filed on behalf of all Union members regarding unfair

treatment by the answering service (Exhibit Y8);

10/10/01 - Union grievance filed on behalf of all Union members regarding the Housing

Authority's reneging of contract negotiations with the Union (Exhibit Y9);

10/10/01 - Union grievance filed on behalf of Union employee Fabian Mena for

management's unfair treatment of minorities, in violation of state and federal law,

in refusing to hire minorities in the position of Maintenance Mechanic (Exhibit

Y10);

4/9/01 - Union grievance filed on behalf of Union Employee Barry Nixon for

management's failure to pay Nixon for all hours worked, in violation of C.G.S.A.

§ 31-76b(2)(C) (Exhibit Y11);

1/8/01 - Union grievance filed on behalf of all Union members regarding contractual

violations as per answering service procedure during snow storm (Exhibit Y12);

1/8/01 - Union grievance filed on behalf of all Union members regarding contractual

violations as per bargaining unit employee availability at Veterans Terrace

(Exhibit Y13);

1/8/01 - Second Union grievance filed on behalf of all Union members regarding

contractual violations as per bargaining unit employee availability at King Court

(Exhibit Y14);

6/2/00 - Union grievance filed on behalf of Union employee Bill Hebert regarding

management's failure to honor Herbert's request to be removed from the overtime

On-call list (Exhibit Y15);

4/19/00 - Union grievance filed on own behalf regarding failure of the executive director

to  arrange a timely grievance response (Exhibit Y16);

4/17/00 - Union grievance filed on own behalf regarding favoritism by answering service

and failure to allocate overtime according to the On-call Aide list (Exhibit Y17);

2/28/00 - Union grievance filed on own behalf regarding contractual violations by

Maintenance Supervisor Michael Seamon (Exhibit Y18);

2/7/00 - Union grievance filed on own behalf regarding failure of Andre Dumas to

allocate overtime equally as contractually required of him as Manager of

Buildings, Grounds, and Facilities (Exhibit Y19);

6/5/98 - Union grievance filed on behalf of then Union President Joseph Sousa regarding management's failure to pay Sousa for overtime earned.   (Exhibit Y20.)

5.    On October 29, 30, 31, 1997, the plaintiff was forced to remove a 9' x 9' asbestos tile floor without proper protective clothing. (Exhibits C, D, D1, D2, D5.)

6.    The plaintiff reported this to OSHA and gave a statement regarding the incident to Shirley Burns of CIRMA. (Exhibit D.)

7.    OSHA issued citations to EHHA for this conduct. (Exhibit D1, D3, D4.)

8.    The plaintiff filed a grievance in June of 1998 regarding claims made by John Roughn ("Roughn") that the EHHA had not had any problems with asbestos floor removal and OSHA and that the tile removal had been subcontracted out, when in fact plaintiff had regularly removed asbestos from EHHA buildings**.** (Exhibit U.)

9.    In June of 1998 plaintiff filed a grievance alleging EHHA supervisors required plaintiff to use tools to sand floors which put plaintiff's health at risk.  After contacting OSHA, the supervisor, rescinded his previous order to plaintiff. (Exhibit V.)

10.   In January 2000, the plaintiff notified the defendant Andre Dumas, that a sprinkler pipe had frozen and that Dumas needed to call someone to repair it.  Dumas responded that hopefully nothing would happen.  The frozen pipe broke costing the Housing Department $20,000. (Exhibit B, ¶ 28: Exhibit Z.)

11.   The EHHA, advised plaintiff that he was not to receive forms from the Department of Labor for filing complaints against the EHHA while plaintiff was at work and that he was not to fill out the complaints while at work.  (Exhibit W.)

12.   Section 4.3 of the collective bargaining agreement between plaintiff's union and the

EHHA states, "[w]hen a vacancy exists or a new position is created, the employee with the highest seniority shall be given the first opportunity to fill the position provided he is qualified." (Exhibit X.)

13. Plaintiff applied, and was denied, a position as Maintenance Mechanic in: (a) June 1989 (Exhibit E); July 1996 (Exhibit F); September 1997 (Exhibit G); August 1998 (Exhibit H); March 1999 (Exhibit I); April 1999 (Exhibit J); June 1999 (Exhibit K); November 1999 (Exhibit L); July 2000 (Exhibit M); October 2001 (Exhibit N.)

14. Plaintiff applied, and was denied, a position as Maintenance Supervisor in: (a) November 1996 (Exhibit O); January 1999 (Exhibit P.)

15. In February 1997 a position for Maintenance Mechanic was filled by an outside individual who did not have a B-4 license. (Exhibit B, ¶ 3.)

16. The February 1997 position was never posted and the plaintiff was never given the opportunity to apply for the job. (Exhibit B, ¶ 3.)

17. On a number of occasions plaintiff was not promoted to Maintenance Mechanic despite being the most senior. (Exhibit B, ¶ 14.)

18. Not only was plaintiff the most senior applicant for the job, but he actually performed all of the duties required of a Maintenance Mechanic, and was expected to perform those duties, regularly for the EHHA. (Exhibit B, ¶¶ 7-8.)

19. Since the EHHA began "requiring" licenses from its Maintenance Mechanics for the duties they perform, numerous Maintenance Mechanics have been hired who do not hold the appropriate license for the work they perform. (Exhibit B, ¶¶ 4-6.)

20. Defendants are aware of, and permit, persons who do not hold licenses for the jobs they perform, continue to perform those jobs. (Exhibit B, ¶ 27.)

21.    Defendant Roughn, refused to meet with the plaintiff  (Exhibit B, ¶ 9.)

22.    Plaintiff is 60 years old.   (Exhibit B, ¶13.)

23.    After many of EHHA's denials of plaintiff's applications for the position of Maintenance

       Mechanic, EHHA hired younger employees.   (Exhibit B, ¶ 14.)

24.    Plaintiff was qualified for the position as evidenced by his duties at the EHHA which

       required that he perform all of the duties of a Maintenance Mechanic.  (Exhibit B, ¶¶ 7-

       8.)

25.    In 1986, the Plaintiff suffered a compensable injury which was covered by the

       Connecticut Workers Compensation Act. (Exhibit Q ¶ 17; Exhibit B ¶ 10.)

26.    In 1993, plaintiff was charged with sick time for a 1986 injury even though he was still

       eligible for workers' compensation. (Exhibit B, ¶ 10.)

27.     The defendants have charged Plaintiff forty-five sick days for this injury even though it

       was covered by workers compensation.  (Exhibit B, ¶ 12.)

28.    Plaintiff tried to have his sick time reinstated through numerous hearings and was only

       able to reach an agreement with EHHA's compensation carrier in 1994; However, after

       this agreement was made,  EHHA still refused to adjust plaintiffs's time record until

       1998, almost five years after the agreement. (Exhibits B ¶ 11, Q  ¶ 18, R, S.)

29.    Since receiving this injury, the Housing Authority has refused to promote Plaintiff to

       Maintenance Mechanic.  (Exhibits E- N.).

30.    The acts and conduct of the defendants' in charging Plaintiff for sick days and in not

       promoting him to Maintenance Mechanic were intentional and willful. (Exhibit B, ¶ 26.)

31.    On or about December 19, 2002, the plaintiff was approached by defendant Jeff Arns

       ("Arns") in the parking lot outside of the company Christmas party.  (Exhibit B, ¶ 17:

Exhibit AA.)

32. Arns proceeded to verbally and physically threaten the plaintiff about continuing to

pursue legal action specifically stating, "If you take this any further you'll be sorry".

(Exhibit B, ¶ 18, Exhibit AA.)

33. On or about February 5, 2003, the plaintiff was called into the office of defendant Terry

Madigan ("Madigan") to discuss a second step grievance. (Exhibit B, ¶ 19.)

34. The plaintiff is allowed by his union contract to have a third party present at these

meetings but his request to have his council present was denied by Madigan. (Exhibit B,

¶ 20.)

35. The plaintiff was immediately confronted by defendants Andre Dumas ("Dumas"), Arns

and Madigan with questions about his pending legal action. (Exhibit B, ¶ 21.)

36. Arns, Dumas, and Madigan became increasing hostile when the plaintiff refused to

answer any questions about his pending legal action. (Exhibit B, ¶ 22.)

37. Madigan then physically and verbally threatened the plaintiff. (Exhibit B, ¶ 23.)

38. Madigan was physically restrained to prevent him from making contact with the plaintiff.

(Exhibit B, ¶ 24.)

39. Madigan told the plaintiff, "If you take this any further you'll be sorry," referring directly

to the legal action they had been discussing. (Exhibit B, ¶ 25.)

40. The defendants refuse to promote plaintiff to the position of Maintenance Mechanic

because of his age, his union activity and his shoulder injury. (Exhibit B, ¶ 13.)

41. The following maintenance aids performed work which they did not have a license to

perform. See as follows:

Allen Harrison performed electrical, plumbing and heating duties without a license

(Exhibit BB);

Dave Wentworth performed electrical, plumbing, heating and tile work duties with a license (Exhibit DD), his heating license expired in 2000 (Exhibit NN);

Eddie Desenzo performed heating, electrical and plumbing duties without a license (Exhibit EE);

Don Gugliotti performed heating and plumbing duties (Exhibit FF), he has a plumbing license, but has no heating license (Exhibit NN);

Bill Hebert performed heating and electrical duties without a license (Exhibit GG), his plumbing license expired in 1999 (Exhibit NN);

Nick Klupuko performed heating, electrical, and plumbing duties without a license (Exhibit HH);

Fabian Mena performed heating, electrical and plumbing duties without a license (Exhibit II);

Bill Nixon performed electrical duties without a license (Exhibit JJ);

Brian Ayotte performed heating duties without a license (Exhibit KK);

Ed Couva performed heating and electrical duties without a license (Exhibit LL), his plumbing license expired in 2002 and he has no electrical or heating licenses (Exhibit NN);

James Lawrence performed electrical duties without a license (Exhibit MM), his electrical license expired in 1999 (Exhibit NN).