## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

**CARMELO GAGLIARDI,**
               **Plaintiff**

**V.**

**EAST HARTFORD HOUSING**
**AUTHORITY ET AL.,**
               **Defendants**

**CASE NO. 3:02-**
**CV-478 (EBB)**



**DECEMBER 28, 2004**

### ROBERT L1NBERK AND AFSCME, COUNCIL 4, LOCAL 1303-353'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56(a), the Defendant Robert Linberk, in his official capacity, and the American Federation of State, County and Municipal Employees, Local 1303-353 [hereinafter "the Union"], hereby move this Court to enter summary judgment in their favor as to Counts Three and Seven of the Plaintiffs Amended Complaint dated March 14, 2003.

The Plaintiff was hired by the East Hartford Housing Authority in 1978 as a Maintenance Aide. *See* **Exhibit A, Deposition of Carmelo Gagliardi, 12/05/03, pp. 11, 18-19, 21-22.** The plaintiff has been a member of the Union since he began his employment with the East Hartford Housing Authority. *See* **Exhibit A, p. 30.**

The job classification of Maintenance Aide and description included manual work performing a variety of unskilled and semi-skilled tasks, which did not require journeyman's knowledge. *See* **Exhibit A, p. 20.**

On or about, June 6, 1989, Plaintiff filed a grievance with the Union because he was denied a promotion from Maintenance Aide to Maintenance Mechanic based on the fact that he did not have an occupational license. *See* **Exhibit C.** After proceeding

through the necessary steps, a hearing was held at the State Labor Board on March 23, 1993. *See* **Exhibit D.**

On October 22, 1993 the Labor department issued an arbitration decision in favor of the East Hartford Housing Authority on the issue of the occupational license requirement. *See* **Exhibit D.** The majority of the arbitration panel held that the Plaintiff was not qualified for the Maintenance Mechanic's position. *See* **Exhibit D, p.2.** The decision of the arbitration panel was appealed to the Superior Court and upheld. AFSCME, Local 1174, AFL-CIO v. Housing Authority of East Hartford. Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 704770 (November 22, 1996) *See* **Exhibit E.**

In 1996, the Plaintiff applied for a promotion from Maintenance Aid to Maintenance Mechanic. *See* **Exhibit B, Deposition of Carmelo Gagliardi, 08/26/04, p. 14.** The Plaintiff filed a grievance with the Union because he was denied the promotion based on the fact that he did not have an occupational license. *See* **Exhibit B, p. 14.** The Plaintiff engaged in the steps to a grievance as set forth in the Collective Bargaining Agreement. *See* **Exhibit F, Collective Bargaining Agreement, Article XIV, Grievance Procedure, § 14.0; Exhibit B, pp. 14-15.** The Plaintiff engaged in the first step of the grievance procedure by meeting with the Maintenance Superintendent, Leo Gagliardi, his brother. *See* **Exhibit B, p. 16.** The grievance was denied. *See* **Exhibit B, p. 16.** Next, the Union representative presented the grievance to Executive Director John D. Roughan, and the Plaintiff became engaged in the second step of the grievance procedure. *See* **Exhibit B, p. 16.** The Union representative was present at the second step meeting. *See* **Exhibit B, p. 16.** The grievance was denied. *See* **Exhibit B, p.** 17. Next, the Union

presented the grievance to the Commissioner of the Housing Authority, and the Plaintiff became engaged in the third step. *See* **Exhibit B, p.** 17. The grievance still was not resolved. *See* **Exhibit B, p.** 17. Therefore, Defendant Robert Linberk submitted the grievance to the Connecticut Board of Mediation and Arbitration. *See* **Exhibit B, p. 17-18.**

On or about February 19, 1998, the East Hartford Housing Authority filed a complaint with the Connecticut State Board of Labor Relations alleging that the Union violated the relevant provisions of the collective bargaining agreement when it filed a grievance on January 29, 1998 regarding Plaintiffs request for promotion to Maintenance Mechanic. *See* **Exhibits G and H.**

On July 7, 1998, the East Hartford Housing Authority and the Union entered a settlement agreement in which the Union agreed to withdraw the grievance filed by the Plaintiff on January 29, 1998, and that it would not file or process any grievance relative to the same issue. *See* **Exhibit I.**

On or about October 16, 1998, the East Hartford Housing Authority filed a complaint with the Connecticut State Board of Labor Relations alleging that the Union violated the collective bargaining agreement and a prior settlement agreement when it filed another grievance on October 9, 1998 on behalf of the Plaintiff regarding the issue of promotion to Maintenance Mechanic. *See* **Exhibit J.**

On or about August 27, 1999, the East Hartford Housing Authority filed a complaint with the Connecticut State Board of Labor Relations alleging that the union violated the collective bargaining agreement and settlement agreement when it filed grievances on June 10, 1999 and July 26, 1999. *See* **Exhibit K.**

On June 6, 2000, William Kluytenaar, Defendant Robert Linberk, the Plaintiff and Counsel for the Union were present at the Connecticut State Board of Labor Relations regarding a complaint filed by the East Hartford Housing Authority as to the numerous grievances filed on behalf of the Plaintiff due to his denial of promotion. *See* **Affidavit of Robert Linberk.** Attorney Gagne met with William Kluytenaar, Robert Linberk and Carmelo Gagliardi prior to the hearing. *See* **Affidavit of Robert Linberk.** Settlement discussions ensued, and a settlement was proposed. *See* **Affidavit of Robert Linberk.** The hearing was to take place at 1:30p.m. The Plaintiff was told that he could sign the settlement agreement or proceed with the hearing as scheduled. *See* **Affidavit of Robert Linberk.** The Plaintiff chose to sign the settlement agreement resolving all grievances filed by him. *See* **Exhibit B, p. 19 and Exhibit L.**

On March 19, 2002, the Plaintiff filed a complaint against Robert Linberk, Staff Representative, in his individual and official capacity. The Court granted the Defendant's Motion to Dismiss with regard to Robert Linberk in his individual capacity on January 7, 2004. AFSCME, Council 4 Local 1303-353 is not listed as a Defendant in the caption of the complaint. However, Counsel for Robert Linberk was informed through the Plaintiffs deposition testimony that the Plaintiff considers the Union a defendant in the instant case. *See* **Exhibit** A, **p. 41-42.** Mr. Linberk does not hold an official position with the Union. *See* **Affidavit of Robert Linberk.** He is simply a Staff Representative who provides labor services to the Union. *See* **Affidavit of Robert Linberk.**

The Union was *never served.* Contrary to deposition testimony that the Union was just omitted from the Amended Complaint caption, but included in the caption of the original complaint, the Union was *never* included in any case caption, nor served. *See* **Exhibits M, P and Q.** This Court cannot enter judgment against AFSCME, Council 4, Local 1303-353, when it is not a party to the case.

It should be noted that the motion, memorandum and supporting documents were drafted in support of a motion for summary judgment on behalf of Defendant Linberk and the Union, should the Court consider the Union a party to the case.

A.    <u>**Standards for Summary Judgment.**</u>

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(e); <u>Manning v. CIGNA Corporation,</u> 807 F.Supp. 889, 892 (D.Conn. 1991). A factual issue is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby. Inc..</u> 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual issue is material if it "might affect the outcome of the suit under the governing law." Id. at 255. In deciding whether a genuine issue of material fact exists, the court must draw all reasonable inferences in favor of the nonmoving party. Id. "While genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party,... materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive

law...." <u>McPherson v. Coombe.</u> 174 F.3d 276, 280 (2d Cir. 1999) [ellipses in original; internal quotation marks and citations omitted].

The initial burden is on the moving party to show that there are no relevant facts in dispute. <u>Celotex.</u> 477 U.S. at 323. To defeat a properly supported motion for summary judgment, however, "the plaintiff must present affirmative evidence .... from which a jury might return a verdict in his favor." Anderson, 477 U.S. at 257. "The mere existence *of some* alleged factual dispute ... will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue *of material* fact." <u>Fax Telecommunicaciones Inc. v. AT & T,</u> 138 F.3d 479, 485 (2d Cir. 1998) [emphasis and ellipses in original; internal quotation marks and citations omitted].

> In order to defeat a summary judgment motion that is properly supported by affidavits, depositions, and documents as envisioned by Fed.R.Civ.P. 56(e), the opposing party is required to come forward with materials envisioned by the Rule, setting forth specific facts showing that there is a genuine issue of material fact to be tried. He cannot defeat the motion by relying on the allegations in his pleading,... or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible, see, <u>e.g., L & L Started Pullets, Inc. v. Gourdine,</u> 762 F.2d 1, 3-4 (2d Cir. 1985); <u>Wyler v. United States.</u> 725 F.2d 156, 160 (2d Cir. 1983). The motion "will not be defeated merely ... on the basis of conjecture or surmise." <u>Bryant v. Maffuccl</u> 923 F.2d 979, 982 (2d Cir.), <u>cert, denied,</u> 502 U.S. 849, 112S. Ct. 152, 116 L.Ed.2d 117 (1991).

<u>Gottlieb v. County of Orange.</u> 84 F.3d 511, 518 (2d Cir. 1996) [some internal citations omitted]. "If the undisputed facts reveal that there is an absence of sufficient proof as to any essential element on which the opponent of summary judgment has the burden of proof, any factual dispute with respect to other elements becomes immaterial and cannot defeat the motion." Id. at 519.

**B.     THIRD COUNT—Summary Judgment is proper because the Plaintiff has not alleged or presented any evidence to prove a viable claim for breach of the duty of fair representation.**

The record in this case is unusually clear: the Plaintiff, in his complaint, claims that the Defendants breached their duty of fair representation by failing to take action against the Housing Authority, including:

> (a) Failing to respond to the plaintiffs numerous requests for information including several subpoenaed documents from 2000 through 2002;
>
> (b) Failing to file grievances on the plaintiffs behalf for the denial of promotion to Maintenance Mechanic in 1996; and
>
> (c) Pressuring the plaintiff to sign a settlement agreement with the Housing Authority, withdrawing all of the grievances filed on behalf of the plaintiff involving the plaintiffs claim that he should have been promoted in 2000.

*See* **Exhibit M, PlaintifPs Amended Complaint** ^f **56.** The Plaintiff has not presented any evidence to support such claims, and no genuine issue of material fact exists. The Defendants are entitled to summary judgment as a matter of law.

At Plaintiffs Deposition on August 26, 2004, the Plaintiff was asked: "With regard to your complaint 56A, what documents are you alleging support your claim that you made numerous requests?" *See* **Exhibit B, pp. 6-8; Exhibit N (Deposition Exhibits 4 through 10).**

**Exhibit N, Deposition Exhibit** 4 is a grievance against the East Hartford Housing Authority seeking the overtime slip of an employee who was called in to work overtime while on vacation. **Exhibit N, Deposition Exhibit** 5 is a grievance against the East

Hartford Housing Authority because the Plaintiff was not called for snow removal when he was available. The Plaintiff seeks a copy of a facsimile from the answering service. **Exhibit N, Deposition Exhibit** 6 is a grievance regarding all overtime for 1998 and whether it was divided equally. The Plaintiff requests from the employer W-2's for the year 1998. **Exhibit N, Deposition Exhibit** 7 is a grievance against the East Hartford Housing Authority because the Plaintiff was not called out for snow removal. The Plaintiff seeks a copy of a facsimile from the answering service. **Exhibit N, Deposition Exhibit** 8 is a grievance against the East Hartford Housing Authority because the Plaintiff was not called out for sanding. The Plaintiff seeks a copy of a facsimile from the answering service. **Exhibit N, Deposition Exhibit** 9 is a grievance regarding whether the Plaintiff is considered to be "available" when he is already out on a call. The grievance seeks a copy of a facsimile from the answering service.

Each of the grievances listed above were filed against the employer. The requests are for information possessed by the employer. The Union does not possess the information requested, nor does it have a duty to provide the Plaintiff with such information. The documents presented by the Plaintiff do not raise a genuine issue as to a material fact.

The Plaintiffs claim must fail as a matter of law. A union breaches its duty of fair representation to a client "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith." <u>Vaca v. Sipes,</u> 386 U.S. 171, 190, 87 S. Ct. 903, 17 L.Ed.2d 842 (1967); <u>Labbe v. Hartford Pension Commission,</u> 239 Conn. 168, 194 (1996). The Defendants do not possess any of the information requested by the Plaintiff, and therefore such documents do not support a

claim for breach of the duty of fair representation. At the Plaintiffs deposition, the

Plaintiff testified as follows:

Q.    But this is all the evidence that you have, oral or written, concerning your

allegation in 56A; is that correct?

A.    I believe, yes.

*See* **Exhibit B, p.ll.**

"Arbitrary or bad-faith conduct... or substantial evidence of fraud, deceitful action

or dishonest conduct... is required to show a breach of the duty of fair representation."

Cruz v. Local Union No. 3 of the Int'l. Bhd. of Electrical Workers. 34 F.3d 1148, 1154 (2d

Cir. 1994), quoting Ryan v. New York Newspaper Printing, 590 F.2d 451, 455 (2d Cir.

1979) [ellipses in Cruz]. The Defendants' alleged failure to provide the Plaintiff with

information that the Union does not possess does not, even remotely, rise to a breach of the

duty of fair representation.

Union President, Joseph Sousa, entered into a settlement agreement with John

Roughan, Executive Director of the East Hartford Housing Authority on January 20, 1999.

The agreement specifically states:

> 2. During each month, in the event that a bargaining unit member has a
> question relative to overtime equalization relative to a specific occurrence, then the
> Union President shall contact the Maintenance Supervisor, and if necessary a copy
> of the pertinent facsimile will be provided to the Union President, in an effort to
> address said bargaining unit members concerns.

*See* **Exhibit N, Deposition Exhibit 10 at p. 3.**

By not providing the Plaintiff with the information requested in the grievances, the

Defendants, as a matter of law, have not breached the duty of fair representation.

"[T]he duty of fair representation is not breached where the union fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance." Cruz, 34 F.3d at 1153-54. As long as the Union acted in good faith, the Court may not intercede on the part of an employee who may have been prejudiced by a rationally founded decision. Cook v. Pan American World Airways, Inc.. 771 F.2d 635, 645 (2d Cir. 1985). The Plaintiff has presented absolutely no evidence that the Defendants have not acted in good faith.

In order for a union's actions to be arbitrary such that it breaches the duty of fair representation, the union's conduct must be "so egregious, so far short of the minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary." Barr v. United Parcel Service, Inc.. 868 F.2d 36, 43 (1989). "A union's action are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness ... as to be irrational." Labbe, 239 Conn, at 195, quoting Air Line Pilots v. O'Neill 499 U.S. 64, 67,111 S. Ct. 1127, 113 L.Ed.2d 51 (1991) [internal quotation marks omitted, ellipses in Labbe]. In order for a union's actions to be in bad faith such that the duty of fair representation is breached, such actions must involve fraudulent, deceitful or dishonest conduct. Int'l. Union of Electrical Workers v. NLRB. 41 F.3d 1532, 1537 (D.C. Cir. 1994). Mere negligence or tactical errors on the part of the Union in processing a grievance do not constitute a breach of the duty of fair representation. Barr v. United Parcel Service. 868 F.2d 36, 43-44 (2d Cir. 1989); Murphy v. Air Transport Local 501. 123 F.Supp.2d 55, 58 (D.Conn. 2000); Fleming v. The Stop & Shop Supermarket Co.. 36 F.Supp.2d 87, 90-91 (D.Conn. 1999).

The Plaintiff has neither alleged nor testified to any facts which would support a claim that the Union acted arbitrary, discriminatory or in bad faith. The undisputed facts are clear: The Plaintiffs grievances were filed against the employer. The information request was made to the employer. None of the documents presented support a claim that the Defendants acted arbitrary, discriminatory or in bad faith. Therefore, the Plaintiff has not alleged, testified or presented any evidence to support a claim for breach of the duty of fair representation against the Defendants. Summary Judgment is proper, there is no genuine issue of material fact, and the Plaintiffs claim must fail as a matter of law.

The Plaintiffs second claim in f56 of the Amended Complaint states:

(b) Failing to file grievances on the plaintiffs behalf for the denial of promotion to Maintenance Mechanic in 1996." Such claim must also fail as a matter of law.

At the Plaintiffs deposition the Plaintiff presented the documents in Exhibit O (Deposition Exhibits 11 through 14) as supporting his claim in 1J56(b) of the Amended Complaint.

> Q.    So, Defendant Exhibits Eleven through Fourteen are the documents that you say reflect your allegation in paragraph 56B concerning failure to file grievances on the Plaintiffs behalf for the denial of promotion to maintenance mechanic in 1966. Am I correct?
>
> A.    Yes. Q.
> All right.

MR. COLES: 1966? A.      1996. *See*
**Exhibit B, pp. 11-12.**

Plaintiffs claim that the Union failed to file grievances regarding denial of a promotion to maintenance mechanic must fail. First, the Plaintiff himself testified at his

deposition that the documents presented as supporting the claim in 56(b) do not contain any evidence that the Union failed to file the grievance. Plaintiff testified as follows:

> Q.    Carmelo, I had marked your Exhibit Eleven, Eleven A through S. Now, could you tell me where in these documents it demonstrates that the Union failed to file a grievance for you in your denial of promotion to maintenance mechanic in 1996?
>
> A.    I can't show you on here, because I don't believe it's on here.
>
> Q.    So, those documents don't contain anything that demonstrates that the Union failed to file a grievance for you in 1996 concerning the denial of promotion to maintenance mechanic?
>
> A.    Right.
>
> Q.    Okay.
>
> A.    This is 1999.
>
> Q.    Right. And then in Exhibits Twelve and Twelve-A through Q, could you tell me where in those documents there's evidence to support your claim that the Union failed to file a grievance for you in 1996 concerning your denial of your promotion to maintenance mechanic?
>
> A.    These are all the same thing. They are 1999.
>
> Q.    So there are none there?
>
> A.    No.
>
> Q.    And then in document thirteen and fourteen, tell me if those support your claim or show evidence that the Union failed to file a grievance for you in 1996?
>
> A.    This is eighty--'98 and '99.
>
> Q.    So-
>
> A.    So, it's impossible.

See **Exhibit B, pp. 12-13.**

In addition to testifying that the documents presented as supportive of the claim made by the Plaintiff in ¶56(b) do not contain any evidence that the Union failed to file grievances on the Plaintiffs behalf, the Plaintiff gave additional testimony that he did engage in the various steps of the grievance process and grievance was filed on his behalf.

Q.     And, did you go to the first step ~

A.     Right.

Q.     -- of the grievance procedure?

A.     Right.

Q.     And you met with—Do you recall who you met with? Who would have been the maintenance—

A.     It would have been Leo Gagliardi, my brother.

Q.     Okay.

A.     And it was denied.

Q.     Now then, there is the second step of the grievance procedure where you go to--

A.     The Executive Director.

Q.     Let me just see.

                (Pause.)

Q.     Right. The Executive Director.

                Did you have a second step meeting on that grievance that you filed?

A.     I believe that we did.

Q.     And who was the Executive Director then?

A.     It was John D. Roughan.

Q.     And, was the Union representative with you at the second step?

A.     Yes.

Q.     Was it Mr. Sieman?

A.     If it—whoever it was.

Q.     They were there?

A.     They were there.

Q.     Did they deny the grievance?

A.     Yes.

Q.     Now did the Union, did you appeal the grievance to the next step, which would have been before the Commissioner of the Housing Authority?

A.     Yeah. Paid the twenty five dollars. You have to pay a fee of twenty five dollars.

Q.     Now, wait a minute now. There's a step to, is that present the grievance to the Commissioners of the Housing Authority. Did you do that?

A.     Yes. Went to third step.

Q.      Okay. And did the Commissioners grant your grievance or deny it? A.

You know Billy, I honestly don't know. But there will be tapes of that.

Q.      Okay. And then the next step if the grievance is not resolved, it's
submitted to arbitration. Am I correct?

A.      Or the mediator. And then it goes to arbitration.

Q.      Okay. Do you recall if that grievance that you filed concerning the denial of
the promotion to position of maintenance mechanic, did that go to mediation? Do you
remember?

A.      Yes.

Q.      Were you able to resolve it at that step.

A.      No.

Q.      And then, it if it's not resolved, it says that either party may submit the
dispute to the Connecticut Board of Mediation and Arbitration. Am I correct?

A.      Correct.

Q.      And do you know, did the Union submit your grievance to arbitration?

A.      Bob Linberk said that he submitted it.

Q.      Now, did the Union ever — when you are submitting it to arbitration, it would
have been to the Connecticut Board of Mediation and Arbitration; right?

A.      Right.

Q.      Did you ever have a grievance—a hearing on that grievance?

A.      Never had a hearing.

Q.      Do you know if you entered into a settlement agreement that resolved many
of the grievances that you had? Do you recall?

A.      No, it never did.

Q.      Well, there's a document here—I want to show you this document that you
signed on June 6 in the year 2000. Okay. See that document?

A.      Yeah.

Q.     That says it resolves all grievances that you filed. Am I correct? A.

Yeah. *See* **Exhibit B, pp. 16-19.**

The above testimony by the Plaintiff demonstrates that a grievance was filed on

behalf of the Plaintiff, and that the Plaintiff was taken through the steps of the grievance

procedure. In fact, as stated earlier, numerous grievances were filed on behalf of the

14

Plaintiff as a result of the denial of the promotion to Maintenance Mechanic. One does not have a claim for breach of the duty of fair representation because he does not find the results favorable to him. There is no genuine issue of material fact, and the Plaintiffs claim must fail as a matter of law.

In the seminal case on the duty of fair representation, Vaca v. Sipes, 386 U.S. 171, 87 S. Ct. 903, 17 L.Ed.2d 842 (1967), the U.S. Supreme Court reversed a finding that the union in that case had breached its duty of fair representation where the union had made a determination that pursuit of the grievance would be fruitless. The Court acknowledged the fact that "[i]n administering the grievance and arbitration machinery as statutory agent of the employees, a union must, in good faith and in a nonarbitrary manner, make decisions as to the merits of particular grievances." Id. at 194, 87 S. Ct. at 919. The Court noted some of the policies underlying this principle:

> If the individual employee could compel arbitration of his grievance regardless of its merit, the settlement machinery provided by the contract would be substantially undermined, thus destroying the employer's confidence in the union's authority and returning the individual grievant to the vagaries of independent and unsystematic negotiation. Moreover, under such a rule, a significantly greater number of grievances would proceed to arbitration. This would greatly increase the cost of the grievance machinery and could so overburden the arbitration process as to prevent it from functioning successfully. It can well be doubted whether the parties to collective bargaining agreements would long continue to provide for detailed grievance and arbitration procedures of the kind encouraged by L.M.R.A. § 203(d), supra, if their power to settle the majority of grievances short of the costlier and more time-consuming steps was limited by a rule permitting the grievant unilaterally to invoke arbitration. Nor do we see substantial danger to the interests of the individual employee if his statutory agent is given the contractual power honestly and in good faith to settle grievances short of arbitration. For these reasons, we conclude that a union does not breach its duty of fair representation, and thereby open up a suit by the employee for breach of contract, merely because it settled the grievance short of arbitration.

15

Id. at 191-92, 87 S. Ct. at 917-18 [internal footnote omitted]. Accordingly, the Court held, "Having concluded that the individual employee has no absolute right to have his grievance arbitrated under the collective bargaining agreement at issue, and that a breach of the duty of fair representation is not established merely by proof that the underlying grievance was meritorious, we must conclude that that duty was not breached here." Id. at 194-95, 87 S. Ct. at 919. in the instant case, there exists no basis upon which a reasonable jury could return a verdict in favor of the Plaintiff for breach of the duty of fair representation.

As to the Plaintiffs third claim in ^[56, summary judgment is also proper. The Amended Complaint states:

> (c) Pressuring the plaintiff to sign a settlement agreement with the Housing Authority, withdrawing grievances filed on behalf of the plaintiff involving the plaintiffs claim that he should have been promoted in 2000.

The Plaintiff has presented no evidence, nor made any specific allegations that the Defendants pressured him into signing a settlement agreement regarding grievances filed because he was denied the position of Maintenance Mechanic. As stated in the **Affidavit of Robert Linberk,** all parties were present at the Connecticut State Board of Labor Relations ready to proceed with the hearing. The Plaintiff was given the option of proceeding or accepting the proposed settlement agreement. The Plaintiff, exercising his own free will, chose to sign the settlement agreement. The Plaintiff has not presented any contrary evidence, nor alleged any specific facts supporting his statement that he was "pressured" to sign the settlement agreement. As a matter of law, the Plaintiff cannot prevail on a claim for breach of the duty of fair representation. He has not alleged or

16

presented evidence that the Union did not act in good faith. No genuine issue of material fact exists.

Therefore, the Defendants respectfully ask that summary judgment enter in their favor.

**3.    Even if the Plaintiff had alleged and could prove an otherwise viable claim for breach of the duty of fair representation, such claim would be time-barred.**

It is well-settled that claims for a breach of the duty of fair representation are subject to a six-month statute of limitations. DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 163, 103 S. Ct. 2281, 2290, 76 L.Ed.2d 476 (1983). "In this circuit, it is well settled that the cause of action accrues no later than the time when plaintiff[ ] knew or reasonably should have known that such a breach of the duty of fair representation had occurred, even if some possibility of nonjudicial enforcement remained." Cohen v. Flushing Hosp. and Medical Center. 68 F.3d 64, 67 (2d Cir. 1995) [internal brackets, quotation marks and citation omitted]; see also Ycaza v. CT Transit-Stamford Division, __ F.Supp.2d __, 2003 WL 22427762 at *2 (D.Conn. 2003); Wilhelm v. Sunrise Northeast. 923 F.Supp. 330, 337 (D.Conn. 1995).

The Plaintiff was denied the promotion to the position of Maintenance Mechanic in 1996. *See* **Exhibit B, p.14.** Plaintiff filed a grievance regarding such denial, also in 1996. *See* **Exhibit B, p.14.** On June 6, 2000, the Plaintiff signed a settlement agreement resolving all grievances filed by the Plaintiff. *See* **Exhibit B, p. 19; Exhibit L.**

The Plaintiff did not file a complaint against Robert Linberk until March 19, 20002; therefore, even if the plaintiff had alleged and could prove an otherwise viable claim for breach of the duty of fair representation, such claim would be time-barred.

Accordingly, the Defendants respectfully ask that this Court enter summary judgment in their favor.

### G.     COUNT SEVEN—The Defendants are entitled to summary judgment as to the Plaintiffs intentional infliction of emotional distress claim.

Under Connecticut law, a claim of intentional infliction of emotional distress requires proof that: (1) the defendant intended or knew that emotional distress was a likely result of his conduct; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused emotional distress and (4) the distress was severe. Cowan v. Federal Exp. Corp., 25 F.Supp.2d 33 (Conn. 1998). "Liability has been found only where the conduct has been *so outrageous* in character, and *so extreme* in degree, as to go *beyond all possible bounds of decency,* and to be *regarded as atrocious,* and *utterly intolerable in a civilized society."* 1 Restatement (Second) of Torts §46, p. 73, comment (d) [Emphasis added].

Plaintiff simply alleges: "The defendants, each and all of them, intended to inflict severe emotional distress upon the Plaintiff, and knew or should have known at all times that their acts or omissions as alleged herein would result in severe emotional distress to the Plaintiff." *See* **Exhibit M, Plaintiff's Amended Complaint,** f 80. The Plaintiff further alleges: "The acts and omissions of the defendants, each and all of them were extreme and outrageous." *See* **Exhibit M, Plaintiff's Amended Complaint, f 81.**

As stated earlier, the Plaintiff cannot defeat a motion for summary judgment by relying on the allegations on his pleadings, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible. Gottlieb v. County of Orange. 84 F.3d 511, 518 (2d Cir. 1996). The Plaintiff has not alleged any specific instances of behavior by Union Defendants that would constitute extreme or outrageous behavior. The Plaintiff has simply made the following allegations without any supporting facts, testimony or documentation:

(a) Failing to respond to the plaintiffs numerous requests for information including several subpoenaed documents from 2000 through 2002.

(b) Failing to file grievances on the plaintiffs behalf for the denial of promotion to Maintenance Mechanic in 1996; and

(c) Pressuring the plaintiff to sign a settlement agreement with the Housing Authority, withdrawing all grievances filed on behalf of the plaintiff involving the plaintiffs claim that he should have been promoted in 2000.

Summary Judgment as to the Defendants is proper. The Plaintiff has not alleged any facts or presented any evidence of conduct that is extreme and outrageous, exceeding all bounds of decency. As a matter of law, the Plaintiffs claim must fail.

"Conduct that is merely insulting, that reflects bad taste or judgment, or that results in hurt feeling is not enough to maintain a cause of action for intentional infliction of emotional distress." Martin v. Citibank, N.A.. 762 F.2d 212, 220 (2nd Cir. 1985); DeLaurentis v. New Haven, 220 Conn. 225, 266-67 (1991).

Further, the alleged conduct regarding failing to file grievances took place in 1996. Under Connecticut law there is a three year statute of limitations for intentional torts. Conn. Gen. Stat. §52-577.

The facts are clear and undisputed, and the law is well-settled. The Plaintiffs claim for intentional infliction of emotional distress must fail. Therefore, it is proper for the Court to award summary judgment in favor of the Defendants as to Count Seven.

## III.    <u>CONCLUSION</u>

For the reasons set forth above, Robert Linberk and AFSCME Council 4, Local 1303-353 respectfully ask that this Court grant summary judgment in their favor.

DEFENDANTS, ROBERT
LINBERK, AFSCME,
COUNCIL 4, LOCAL
1303-353

alliam Gagne,
Office of J. William Gagne, Jr.
Associates, P.C. 970 Farmington
Avenue, Suite 207 West Hartford,
CT 06107 Phone: (860)522-5049
Fax: (860)561-6204 Federal Bar
No. ct02126

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed by U.S. Mail, first class, postage prepaid on December 30, 2004 to the following:

James S. Brewer, Esquire Erin
O'Neil, Esquire 818
Farmington Avenue West
Hartford, CT 06119 (860) 523-
4055

Kevin Coles, Esquire Coles,
Baldwin & Craft, LLC 1261
Post Road P.O. Box 577
Fairfield, CT 06430 (203)319-
0800

J. William Gagne, Jr.