UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-----------------------------X
CARMELO GAGLIARDI,            :
            Plaintiff,        :    CIVIL NO.
                             :
        v.                   :
                             :    3:02 CV 478 (EBB)
EAST HARTFORD HOUSING         :
AUTHORITY, ANDRE DUMAS, JOHN  :
ROUGHAN, ROBERT COUNIHAN,     :
JEFF ARNS, TERRY MADIGAN and  :
ROBERT LINBERK,               :
            Defendants.       :
-----------------------------X
```

## RULING ON ROBERT LINBERK'S
## MOTION FOR SUMMARY JUDGMENT

### I.   Introduction

Plaintiff, Carmelo Gagliardi, is employed at East Hartford Housing Authority ("EHHA") as a Maintenance Aide and has been employed in that capacity since 1978.  Defendant Robert Linberk is a representative of the American Federation of State, County, and Municipal Employees, Local 1303-353 ("AFSCME" or the "Union"). AFSCME is the collective bargaining representative of EHHA employees.

Throughout the years, Plaintiff has filed many grievances and complaints, either on his own or through the Union, regarding various issues including his promotion requests and his displeasure with management's use of cellular telephones.  The underlying lawsuit is the result of the Plaintiff's numerous unsuccessful attempts to be promoted and his dissatisfaction with the treatment he has received from his employer and the Union.  Plaintiff alleges

that Defendant Linberk has not properly represented him in negotiations with EHHA.  In his present motion, Mr. Linberk moves for summary judgment as to Counts Three and Seven of the Plaintiff's Amended Complaint, which allege a breach of the duty of fair representation and intentional infliction of emotional distress, respectively.

## II.  **Factual Background**

Plaintiff, Carmelo Gagliardi, was hired as a Maintenance Aide at EHHA in 1978.  According to an EHHA job description, a Maintenance Aide is responsible for performing a variety of semi-skilled tasks related to building and grounds maintenance.  This work is performed under the supervision of a Maintenance Supervisor and/or the Maintenance Superintendent.

Mr. Gagliardi joined the Union upon his arrival at EHHA in 1978.  He later became the Union steward in 1998 and the Union president in 2000.

In 1981, EHHA began requiring that all Maintenance Mechanics have an occupational license.  Mr. Gagliardi was forty years old at the time, and he has never obtained an occupational license. Section 4.3 of the collective bargaining agreement ("CBA") between EHHA and the Union states the applicable policy regarding seniority.  That section directs that "[w]hen a vacancy exists or a new position is created, the employee with the highest seniority shall be given the first opportunity to fill the position provided

2

he is qualified."  The term "qualified" is not defined in the CBA.

In 1986, Plaintiff sustained a work related injury to his shoulder and filed a workers' compensation claim.  Later, in 1993, Plaintiff reinjured his shoulder and filed a second, related workers' compensation claim.  He was charged with "sick time" after the second injury even though he was properly receiving workers' compensation benefits.  Plaintiff sought to have his sick time restored.  As the result of negotiations between EHHA and Mr. Gagliardi, including a hearing to determine when Plaintiff would be able to return to work, Mr. Gagliardi's sick time was ultimately restored in 1998.  Pl.'s 56(a)2 Statement, ¶ 28, Ex. Q.

The Plaintiff requested a promotion at least eleven times since 1989.[1]  Every request has been denied.  On one or more occasions, Plaintiff was denied despite being the most senior employee to apply for the job.  Each time, Plaintiff was denied the promotion to Maintenance Mechanic for failure to demonstrate that he has obtained an occupational license.  In 1989, the Union filed a grievance on Mr. Gagliardi's behalf.  The basis for the grievance was Plaintiff's claim that he was qualified as a Maintenance Mechanic, but was unfairly denied a promotion.  This grievance was

---

[1] Plaintiff applied for Maintenance Mechanic positions in June 1989, July 1996, September 1997, August 1998, March 1999, April 1999, June 1999, November 1999, July 2000, and October 2001.  He applied for Maintenance Supervisor positions in November 1996 and January 1999.  Pl.'s 56(a)2 Statement at ¶¶ 13-14.

denied, and the denial was confirmed by the EHHA Board of Commissioners. The Union then brought the complaint to the Board of Mediation and Arbitration ("Arbitration Board").[2] In 1993, the Arbitration Board issued an award finding that Mr. Gagliardi was not qualified for the promotion he requested in 1989 because he did not have a license or sufficient practical experience. The Arbitration Board further found that, under the CBA, the EHHA has the authority to determine the qualifications necessary for the positions covered by the CBA and that "one such reasonable qualification" is a B-4 heating license for Maintenance Mechanics. Def.'s 56(a)1 Statement, Ex. G. The Union represented Plaintiff throughout this process.

In 1994, Mr. Gagliardi filed a complaint with the State of Connecticut Commission on Human Rights and Opportunities ("CHRO") regarding the denial of his 1989 promotion request. The complaint was dismissed by the CHRO in 1995 because the complaint was not timely filed - it did not allege that any discriminatory acts had occurred within 180 days of the filing of the complaint. Def.'s 56(a)1 Statement, Ex. K.

In 1996, the Union filed a motion with the Connecticut Superior Court to vacate the 1993 arbitration award. The Superior Court found that, despite Mr. Gagliardi's level of seniority, EHHA

---

[2] The Board of Mediation and Arbitration is a division of the State of Connecticut Department of Labor.

was justified in its refusal to award him the promotion because he
lacked the requisite training and did not have an occupational
license. Def.'s 56(a)1 Statement, Ex. I. The motion to vacate was
denied.

Following the 1989 promotion application and subsequent
grievance, arbitration, CHRO complaint, and Superior Court
decision, the Plaintiff continued to request promotions and the
Union continued to file grievances after those requests were
denied. Accordingly, EHHA began filing complaints with the
Connecticut State Board of Labor Relations ("BLR") alleging, *inter
alia*, that these grievances violated the CBA and contradicted the
Arbitration Board's decision. On July 7, 1998, the Union and EHHA
entered into a settlement agreement ("Settlement Agreement 1"). In
that agreement, the Union agreed to withdraw its grievance and to
refrain from filing any future grievances regarding the promotion
issue. Def.'s 56(a)1 Statement, Ex. X. In consideration for the
Union's concessions, EHHA withdrew its complaint with the BLR.

In October 1998, and also in August 1999, EHHA filed
complaints with the BLR in response to grievances filed by the
Union on behalf of Mr. Gagliardi in October 1998, June 1999, and
July 1999. EHHA complained that each of these grievances
contradicted the Arbitration Board's decision, and violated the CBA
and Settlement Agreement 1. On June 6, 2000, the Union and EHHA
entered into a second settlement agreement ("Settlement Agreement

5

2"), which Mr. Gagliardi signed.  Pursuant to Settlement Agreement 2, the Union agreed, *inter alia*, to withdraw with prejudice any grievances filed by the Union since Settlement Agreement 1 regarding Mr. Gagliardi's promotion requests.  Def.'s 56(a)1 Statement, Ex. AA.  The Union also agreed that it would be liable for associated costs should it subsequently violate Settlement Agreement 2.

On July 12, 2001, Mr. Gagliardi filed a discrimination claim with the CHRO and the United States Equal Employment Opportunity Commission ("EEOC").  His claim was dismissed as untimely and he was provided a "release of jurisdiction" allowing him to bring suit in civil court.

On November 1, 2001, EHHA filed another complaint with the BLR, alleging that on or about October 10, 2001, the Union filed another grievance on behalf of Mr. Gagliardi regarding the promotion issue.  Def.'s 56(a)1 Statement, Ex. BB.  EHHA complained that this grievance violated Settlement Agreements 1 and 2.

On March 19, 2002, Plaintiff filed the complaint in federal court in this matter.  On December 28, 2004, Defendant Linberk filed the underlying motion for summary judgment.  Plaintiff filed his opposition on February 18, 2005, and Defendant completed the briefing by filing his reply on April 28, 2005.

On October 22, 2002, Mr. Gagliardi filed another grievance after being denied another promotion request.  This time, however,

he filed his grievance without the assistance or support of the Union.  On October 24, 2002, the Executive Board of the Union drafted a memorandum explaining its refusal to provide assistance to Mr. Gagliardi due to its obligations under Settlement Agreements 1 and 2.  The Union further advised Plaintiff that, unless the job requirements or Mr. Gagliardi's qualifications change, the Union would not be able to assist Plaintiff with any future grievances regarding this issue.

III.  **Standard of Review**

    A.    **Summary Judgment - Fed.R.Civ.P. 56.**

Summary judgment may not be granted unless the Court determines that there is no genuine issue of material fact to be tried and that the moving party is entitled to judgment as a matter of law.  Dobrich v. Gen. Dynamics Corp., Electric Boat Div., 40 F.Supp.2d 90, 93 (D. Conn. 1999); Fed.R.Civ.P. 56(c).  Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  The burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  Dobrich, 40 F.Supp.2d at 93.  See

also  <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 256 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  If the plaintiff fails to provide any proof of a necessary element of the plaintiff's case, then there can be no genuine issue as to any material fact.  <u>Id.</u>  A complete failure to provide proof of an essential element renders all other facts immaterial.  <u>Id.</u>; <u>see also</u> <u>Goenaga v. March of Dimes Birth Defects Found.</u>, 51 F.3d 14, 18 (2d Cir. 1995)(movant's burden is satisfied if it can point to an absence of evidence to support an essential element of nonmoving party's claim).

**V.    <u>Discussion</u>**

   **A.    Breach of the Duty of Fair Representation (Count Three)**

      1.    *Liability of the Union and Union Representatives.*

The Union has not been made a party to this litigation.  The Union has not been served, nor has an appearance been filed on its behalf.  Furthermore, the Union does not appear in the caption of the Plaintiff's original or amended complaint.  The Union is not a party to this lawsuit.

8

An individual union representative is not liable for damages in a civil action for breach of the duty of fair representation. That duty is owed by the Union, not its individual officers. Robert Linberk is a union representative.

The language of the relevant Connecticut statute is as follows: "[w]hen an *employee organization* has been designated in accordance with the provisions of sections 7-467 to 7-477, inclusive, as the exclusive representative of employees in an appropriate unit, *it* shall have a duty of fair representation to the members of that unit." C.G.S.A. § 7-468(d) (emphasis added).

The federal labor statutes may also provide guidance on this issue. "The judicial interpretation accorded the [National Labor Relations Act ("NLRA")] is ... of great assistance and persuasive force in the interpretation of [Connecticut state labor statutes] because [Connecticut's] statutes dealing with labor relations are closely patterned after the NLRA ...." Town of Winchester v. Connecticut State Bd. of Labor Relations, 175 Conn. 349, 358 (1978). "The law on this issue is well-settled. Union officers and employees are not individually liable for acts performed as representatives of the union." Morris v. Local 819, Int'l Bhd. of Teamsters, 954 F.Supp. 573, 581 (E.D.N.Y. 1997). Plaintiff "does not have any recourse against ... any ... individual union official for his claims for breach of fair representation. His recourse lies with a suit against the Union only." Id.; Husowitz v.

9

American Postal Workers Union, 190 F.R.D. 53, 60 (E.D.N.Y. 1999) (holding that a plaintiff cannot assert a claim for breach of the duty of fair representation against the individual union defendants).

Since the Plaintiff failed to name the Union as a defendant and Mr. Linberk cannot be held liable for breach of the duty of fair representation, Defendant's motion for summary judgment as to Plaintiff's fair representation claim is granted.  However, this Court will also consider the merits of Plaintiff's claims as if the proper defendants had been named.

2.  *The Union's Duty of Fair Representation*.

The law imposes a duty on the Union to represent its members in good faith.  This duty of fair representation is codified in section 7-468(d) of the Connecticut General Statutes.[3]  Pursuant to that section, the Union has the exclusive right and obligation to act for its members and to represent their interests.  Laabe v. Hartford Pension Comm'n, 239 Conn. 168, 193 (1996).  "A union breaches this duty if it acts arbitrarily, discriminatorily or in bad faith."  Id.; Vaca v. Sipes, 386 U.S. 171, 190 (1967).  "In reviewing the substantive decisions of a union, a court engages in a highly deferential review in light of the 'wide latitude that

---

[3] "When an employee organization has been designated in accordance with the provisions of sections 7-467 to 7-477, inclusive, as the exclusive representative of employees in an appropriate unit, it shall have a duty of fair representation to the members of that unit."  C.G.S.A. § 7-468(d).

negotiators need for the effective performance of their bargaining responsibilities.'" Labbe, 239 Conn. at 194, quoting Air Line Pilots v. O'Neill, 499 U.S. 65, 78 (1991).  "It is well settled that negligence will not give rise to a breach of a union's duty of fair representation." Murphy v. Air Transport Local 501, 123 F.Supp.2d 55, 58 (D. Conn. 2000), citing United Steelworkers v. Rawson, 495 U.S. 362, 373 (1989).

The Second Circuit has indicated that unintentional conduct that is not designed to harm union members may violate a union's duty of fair representation only if that conduct is "so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary." Murphy, 123 F.Supp.2d at 58, citing Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1153 (2d Cir. 1994). The "plaintiff's ultimate burden is a demanding one, as 'judicial review of union action ... must be highly deferential, recognizing the wide latitude that unions need for the effective performance of their bargaining responsibility.'" Murphy, 123 F.Supp.2d at 59, citing Spellacy v. Airline Pilots Ass'n-Int'l, 156 F.3d 120, 126 (2d Cir. 1998).

A "union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness ... as to be irrational." Labbe, 239 Conn. at 195, quoting Air

Line Pilots, 499 U.S. at 67.  A "union's actions are made in bad faith if the union acts fraudulently or deceitfully ... or does not act to further the best interests of its members."  Labbe, 239 Conn. at 195, citing Humphrey v. Moore, 375 U.S. 335, 348-49.  The existing line of fair representation cases indicates that "courts have construed the duty [of fair representation] narrowly 'because unions must retain discretion to act in what they perceive to be their members' best interests.'"  Murphy, 123 F.Supp.2d at 59, quoting Galindo v. Stoody Co., 793 F.2d 1502, 1514 (9th Cir. 1986).

In the grievance context, a union may not arbitrarily ignore a meritorious grievance or process it perfunctorily; however an employee does not have an absolute right to have his grievance taken to arbitration.  See Ryan v. New York Newspaper Printing Pressman's Union No. 2, 590 F.2d 451, 455 (2d Cir. 1979).  A critical factor in allowing the union discretion to decline the pursuit of an individual union member's claim is the balancing test a union must conduct in deciding what is best for the entire union, as opposed to the individual employee who seeks to grieve the employer.  Baumgartner v. AFSCME, Council 4, Local 1565, No. CV 000372852, 2004 WL 2039423, at *3 (Conn. Super. Ct. Aug. 11, 2004). "To support a claim that a union acted in a perfunctory manner, there must be evidence that the union acted without concern or solicitude, or gave a claim only cursory attention."  Zarella v. Local 1303-26 of Council 4, AFSCME, AFL-CIO, No. CV 010508213, 2004

12

WL 2669302, at *3 (Conn. Super. Ct. Oct. 28, 2004), citing <u>Curtis v. United Transp. Union</u>, 700 F.2d 457, 458 (8th Cir. 1983). "Mere negligence or mistaken judgment is insufficient to establish a breach of the union's duty." <u>Zarella</u>, 2004 WL 2669302, at *3, citing <u>Poole v. Budd Co.</u>, 706 F.2d 181, 183 (6th Cir. 1983).

       3.    *Conduct Plaintiff Claims Breached The Duty.*[4]

In the present action, Mr. Gagliardi alleges that Mr. Linberk and the Union acted both arbitrarily and in bad faith, thereby breaching the duty of fair representation, by engaging in the following conduct: creating a conflict of interest between the Plaintiff and management; coercing the Plaintiff to withdraw grievances that had been filed against EHHA; coercing the Plaintiff to withdraw a complaint made against Linberk based on misrepresentations made by Linberk; failing to properly represent the interests of the Plaintiff at arbitration hearings and in negotiations; refusing to file grievances on the Plaintiff's behalf; refusing to pursue the Plaintiff's grievances beyond the second step; and refusing to provide the Plaintiff with the information he requested. <u>See</u> Pl.'s Opp'n at 3, 9-10. The Plaintiff cites to various statements and exhibits from his

---

[4] Though notice by this Court is not necessary, parties are hereby reminded that, pursuant to Local Rule 56(a)3, "failure to provide specific citations to evidence in the record as required by this Local Rule may result in sanctions, including, when the movant fails to comply, an order denying the motion for summary judgment, and, when the opponent fails to comply, an order granting the motion." L.Civ.R. 56(a)3.

affidavit and depositions – some of which are relevant, some of which are not – as evidence to support his claims.

In particular, Plaintiff complains that Linberk (1) "worked against the plaintiff with the Housing Authority Supervisor, John Rohgn (sic);" (2) negotiated a new CBA while Plaintiff was president of the Union, but declined to present this new CBA to the Union members until after Plaintiff was no longer president; (3) would not represent Plaintiff at the Second Step Level of the grievance process because he and the EHHA Director were "friendly and had a social personal relationship;" (4) coerced the Plaintiff into withdrawing grievances before they were heard by the Labor Department; (5) coerced the Plaintiff into withdrawing his complaint against Linberk by promising to "take care" of all Plaintiff's issues; (6) inadequately negotiated the issue of an occupational license requirement in 1981; (7) failed to argue a timeliness issue at an arbitration hearing; (8) failed to file a brief on Plaintiff's behalf during an arbitration proceeding; (9) failed to file a grievance on Plaintiff's behalf regarding management's use of cell phones; and (10) failed to provide specific documents, audio tapes, faxes, and other information that Plaintiff requested. Pl.'s 56(a)2 Statement of Material Facts in Dispute ¶¶ 1-16.

> a. *CBA Negotiation, Grievances, Complaints, and Arbitration.*

We turn first to Plaintiff's criticism of the Union's

14

performance with respect to grievances, complaints, and other union related business. "A union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." <u>Air Line Pilots</u>, 499 U.S. at 67. A "union's actions are made in bad faith if the union acts fraudulently or deceitfully ... or does not act to further the best interests of its members." <u>Labbe</u>, 239 Conn. at 195, citing <u>Humphrey v. Moore</u>, 375 U.S. 335, 348-49.

Mr. Gagliardi claims that he negotiated a new CBA with Mr. Linberk in 2000, but Linberk failed to present it to the Union members until after Plaintiff was no longer Union president. As his only support for this assertion, Plaintiff cites to his own deposition testimony. However, the topic of the referenced colloquy is Mr. Linberk's negotiations with EHHA in 1981 regarding the occupational license requirement. <u>See</u> Pl.'s 56(a)2 Statement of Material Facts ¶ 8; Pl.'s Dep. 2/3/04, p.93-94. The cited testimony has nothing to do with a CBA negotiated in 2000. Because Plaintiff provides no other support for this claim, it is meritless and fails to allege a breach of the duty of fair representation.

Mr. Gagliardi also claims that Linberk improperly persuaded him to withdraw pending grievances. <u>See</u> Pl.'s Mem. In Opp'n at 3; Pl.'s 56(a)2 Statement of Material Facts ¶ 2. To support this allegation, Plaintiff claims that Linberk told him there was

insufficient evidence to support the grievance and that Plaintiff would have a chance to file again. Pl.'s Dep. 3/29/04, p.221, lines 8-20. Without more, this falls within the "wide range of reasonableness" that guides the Court's evaluation of the Union's decisions. <u>Labbe</u>, <u>supra</u>, at 195. Plaintiff's evidence indicates that Mr. Linberk received, reviewed, and evaluated Plaintiff's claim, and then made a reasonable decision to withdraw the grievance based on Plaintiff's lack of evidence.

Likewise, there is no evidence, outside of Plaintiff's statements, that Linberk's decision not to file a grievance regarding management's use of cell phones was arbitrary or made in bad faith. Pl.'s 56(a)2 Statement of Material Facts ¶ 9.

Next, Plaintiff asserts that Linberk inappropriately convinced him to withdraw a complaint pending against Lindberk regarding Plaintiff's requests for information. Pl.'s Mem. In Opp'n at 3; Pl.'s 56(a)2 Statement of Material Facts ¶¶ 3-6; Pl.'s Aff. Ex. 2. Again, Plaintiff cites to his own affidavit statements and nothing else to show that the failure to comply with Plaintiff's requests was either arbitrary or bad faith conduct by the Union. Pl's Aff. ¶¶ 14-18. Plaintiff's meager evidence does not support his claim.

Finally, Plaintiff takes issue with Defendant's strategy during arbitration proceedings. More specifically, Plaintiff complains that Defendant chose not to file a brief on Plaintiff's behalf in connection with an arbitration proceeding, and that

Defendant should have argued an issue of timeliness during a separate arbitration.  Pl.'s Mem. In Opp'n at 3; Pl.'s 56(a)2 Statement of Material Facts ¶¶ 7,14.  However, no evidence has been presented that would support an inference that, if Linberk had asked the timeliness-related questions, the responsive answers might have caused the neutral arbitrator to reach a different conclusion.  See Murphy, 123 F.Supp.2d at 63.  Considering the wide latitude afforded unions in making strategic decisions, Plaintiff's evidence is insufficient to prove arbitrary or bad faith conduct. While plaintiff might disagree in hindsight with some of Linberk's strategic choices, he fails to present a fair representation claim based on these issues.

> b.    Mistakes, Omissions, and/or Negligence By The
>        Union.

"It is well settled that negligence will not give rise to a breach of a union's duty of fair representation."  Murphy, 123 F.Supp.2d at 58.  Plaintiff made several requests of Defendant during 2000 and 2001 that he provide certain documents, including audio tapes, faxes from the EHHA answering service, and photocopies of all occupational licenses held by EHHA Maintenance Mechanics. Pl.'s 56(a)2 Statement of Material Facts ¶¶ 10-12.  The Union did not provide all of the documents that Plaintiff requested; however it claims that some of that information is in the possession of EHHA and the Union can only forward Plaintiff's request.  Further, Plaintiff argues that Defendant did not adequately advance the

17

Plaintiff's interests during negotiations prior to the 1981 addition of an occupational license requirement in the Maintenance Mechanic job description. Pl.'s Mem. In Opp'n at 3; Pl.'s 56(a)2 Statement of Material Facts ¶ 13 ("Lindberk (sic) did not fight to protect the rights of the plaintiff when negotiating the job description of the Maitennace (sic) Mechanic's position."). The only support Plaintiff cites for this assertion is, again, his own deposition testimony. Pl.'s Dep. 3/29/04, p.132, lines 23-24 ("Bob Lindberk (sic) never fought for us to change that."). Assuming, *arguendo*, that the response to Plaintiff's requests was incomplete and that Linberk was incompetent in the performance of license-related negotiations with EHHA, these alleged mistakes do not rise to the level of arbitrary or bad faith conduct.

> c.  *Linberk's Social Relationship*
>     *With John Roghan*.

Finally, Plaintiff claims that an improper social relationship developed between Defendant and John Roghan, an executive director at EHHA. Pl.'s Mem. In Opp'n at 3; Pl.'s 56(a) Statement of Material Facts ¶¶ 1, 16. Once again, Plaintiff offers no support other than his own statement that he believes the Defendant and Mr. Roghan were "working against" him, and he fails to articulate a justification for this belief.

Plaintiff has not alleged the type of behavior that rises to the level of arbitrary or bad faith conduct on the part of the Union. Accordingly, Defendant's motion for summary judgment as to

Count Three is granted.

> 4.   *Statute of Limitations For Breach of Duty Claim*.

Plaintiff's fair representation claim is brought pursuant to Connecticut state law, and it is unclear what statute of limitations, if any, is applicable.  The relevant section of the Connecticut General Statutes does not contain a limitations period for private civil actions based on a breach of the duty of fair representation.  <u>See</u> C.G.S.A. § 7-460 *et seq.*  While the federal limitations period appears to be six-months, it is not clear whether cases brought pursuant to the Connecticut statute are similarly limited.  <u>Paollilo v. City of New Haven</u>, No. 3:00CV1276 (RNC), 2001 WL 777482, at *1-3 (D. Conn. May 23, 2001).  However, since the Plaintiff's claim fails on the merits, it is not necessary to reach the statute of limitations issue.


**B.    Intentional Inflction of Emotional Distress (Count Seven)**

Count Seven of Plaintiff's Amended Complaint is addressed to all individual defendants.  In Plaintiff's memorandum in opposition to the underlying motion, he withdrew his claim for intentional infliction of emotional distress against Mr. Linberk.  <u>See</u> Pl.'s Mem. In Opp'n at 12.  Since no other individual defendants joined in the underlying motion, the Court need not address the merits of the intentional infliction of emotional distress claim, and it is dismissed as to Mr. Linberk.

**CONCLUSION**

Defendant Linberk's motion for summary judgment [Doc. No. 121] is hereby GRANTED.


SO ORDERED


_____
ELLEN BREE BURNS
SENIOR UNITED STATES DISTRICT JUDGE


Dated at New Haven, Connecticut this ____ day of September, 2005.