UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------X
CARMELO GAGLIARDI,            :
            Plaintiff,        :    CIVIL NO.
                             :
        v.                   :
                             :    3:02 CV 478 (EBB)
EAST HARTFORD HOUSING        :
AUTHORITY, ANDRE DUMAS, JOHN :
ROUGHAN, ROBERT COUNIHAN,    :
JEFF ARN, TERRY MADIGAN and  :
ROBERT LINBERK,              :
            Defendants.      :
------------------------------X
```

**RULING ON MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS EAST HARTFORD HOUSING AUTHORITY, ANDRE DUMAS, JOHN ROUGHAN, ROBERT COUNIHAN, JEFF ARN, AND TERRY MADIGAN**

**Introduction**

This motion for summary judgment was brought by the defendants East Hartford Housing Authority ("EHHA"), Andre Dumas, Manager of Buildings, Grounds, and Facilities, Robert Counihan, Acting Director, Terry Madigan, Director, Jeffrey Arn, Supervisor, and John Roughan,[1] Executive Director, (collectively, the "EHHA Defendants" or "Defendants"). Robert Linberk, Business Agent for American Federation of State, County and Municipal Employees Local 1303-353 (hereinafter, "the Union" or "AFSCME") filed a separate motion for summary judgment which was ruled on by this Court separately.

---

[1] Defendant John Roughan, former Executive Director of EHHA, died in February of 2001. Pl.'s 56(a)2 Statement, Ex. A, ¶ 12(h).

## **Factual Background**

The following facts consist of those deemed necessary to an understanding of the issues raised in, and decision rendered on, this motion.  The facts are culled from the Amended Complaint, the parties' Local Rule 56(a)(1) - (3) Statements, the memoranda of law, and the exhibits attached thereto.

Plaintiff, Carmelo Gagliardi, was hired as a Maintenance Aide at EHHA in 1978.  He joined the Union in 1978, and became the steward in 1998 and president in 2000.  According to a job description provided by the Defendants, a person holding the position of Maintenance Aide is responsible for performing a variety of semi-skilled tasks related to building and grounds maintenance.  This work is performed under the supervision of a Maintenance Supervisor and/or Maintenance Superintendent.

An occupational license has been a requirement of the position of Maintenance Mechanic at EHHA since 1981.  Mr. Gagliardi was forty years old at the time.  He has never obtained an occupational license.  Section 4.3 of the collective bargaining agreement ("CBA") between EHHA and the Union states the applicable policy regarding seniority.  That section directs that "[w]hen a vacancy exists or a new position is created, the employee with the highest seniority shall be given the first opportunity to fill the position provided he is qualified."  The term "qualified" is not defined in the CBA.

2

An occupational license is not a requirement of the position of Maintenance Supervisor, which is a management position and instead requires the demonstration of management qualities. For example, a classified ad for this position identified as the applicable job requirements "a high school diploma (or equivalent) plus six years of progressively responsible building, grounds, and facility maintenance experience, including experience in a supervisory capacity." Pl.'s 56(a)2 Statement, Ex. P.

In 1986, Plaintiff sustained a work related injury to his shoulder and filed a claim for workers' compensation benefits. Later, in 1993, Plaintiff reinjured his shoulder and filed a second, related workers' compensation claim. He was charged with "sick time" after the second injury even though he was properly receiving workers' compensation benefits. Plaintiff sought to have his time records corrected to accurately reflect why he was unable to work and to have his sick time restored. As the result of negotiations between EHHA and Mr. Gagliardi, including a hearing to determine when Plaintiff would be able to return to work, Mr. Gagliardi's sick time was ultimately restored in 1998. Pl.'s 56(a)2 Statement, ¶ 28, Ex. Q.

The Plaintiff has requested promotions to either Maintenance Mechanic or Maintenance Supervisor numerous times since 1989.[2]

---

[2] Plaintiff applied for Maintenance Mechanic positions in June 1989, July 1996, September 1997, August 1998, March 1999, April 1999, June 1999, November 1999, July 2000, and October

Every request has been denied.  On one or more occasions, Plaintiff was denied despite being the most senior employee.  Each time Plaintiff was denied a promotion to Maintenance Mechanic, EHHA cited Plaintiff's failure to demonstrate that he has obtained an occupational license.  In 1989, after EHHA denied one of Plaintiff's promotion requests, the Union filed a grievance on Mr. Gagliardi's behalf.  The basis for the grievance was the Plaintiff's claim that he was qualified for the job and was unfairly denied the promotion.  The grievance was denied, and that denial was confirmed by the EHHA Board of Commissioners.  The Union then brought the complaint to the Board of Mediation and Arbitration ("Arbitration Board").[3]  In 1993, the Arbitration Board issued an award finding that Mr. Gagliardi was unqualified for the promotion he requested in 1989 because he did not have the required license or practical experience for a promotion to Maintenance Mechanic.  The Arbitration Board further found that, under the CBA, EHHA has the authority to determine the qualifications necessary for the positions covered by the CBA and that "one such reasonable qualification" is a B-4 heating license.  Defs.' 56(a)1 Statement, Ex. G.

---

2001.  He applied for Maintenance Supervisor positions in November 1996 and January 1999.  Pl.'s 56(a)2 Statement at ¶¶ 13-14.

[3] The Board of Mediation and Arbitration is a division of the State of Connecticut Department of Labor.

4

In 1994, Mr. Gagliardi filed a complaint with the State of Connecticut Commission on Human Rights and Opportunities ("CHRO") regarding the denial of his 1989 promotion request. The complaint was dismissed by the CHRO in 1995 because it was not timely filed - no discriminatory acts were alleged to have occurred within 180 days of the filing of the complaint. Defs.' 56(a)1 Statement, Ex. K.

In 1996, the Union filed a motion with the Connecticut Superior Court to vacate the 1993 arbitration award. In its Memorandum of Decision, the Superior Court found that, despite Mr. Gagliardi's level of seniority, EHHA was justified in its refusal to award him the promotion because he lacked the requisite training and license. Defs.' 56(a)1 Statement, Ex. I. The motion to vacate was denied.

During the same year, Plaintiff applied for a Maintenance Supervisor position. Mike Seamon was ultimately awarded this position despite the fact that he had less seniority than the Plaintiff.

Following the 1989 promotion application and subsequent grievance, arbitration, CHRO complaint, and Superior Court decision, the Plaintiff continued to request to be promoted to Maintenance Mechanic despite having never obtained an occupational license. He also continued to file grievances. During this time, the EHHA began to file complaints with the Connecticut State Board

of Labor Relations ("BLR") alleging, *inter alia*, that Mr. Gagliardi's grievances were in violation of the CBA and that they contradicted the Arbitration Board's decision. On July 7, 1998, the Union and EHHA entered into a settlement agreement ("Settlement Agreement 1"). In that agreement, the Union agreed to withdraw the grievance filed on January 29, 1998 on behalf of Mr. Gagliardi and to refrain from filing any future grievances regarding Mr. Gagliardi's desire to be promoted without a license. Defs.' 56(a)1 Statement, Ex. X. In consideration for the Union's concessions, EHHA withdrew its complaint with the BLR.

In October 1998, and also in August 1999, EHHA filed complaints with the BLR in response to grievances filed by the Union on behalf of Mr. Gagliardi in October 1998, June 1999, and July 1999. EHHA complained that these grievances each violated the CBA, contradicted the Arbitration Board's decision, and violated Settlement Agreement 1. On June 6, 2000, the Union and EHHA entered into a second settlement agreement ("Settlement Agreement 2"). Pursuant to Settlement Agreement 2, the Union agreed, *inter alia*, to withdraw with prejudice any grievances filed by the Union since Settlement Agreement 1 regarding Mr. Gagliardi's promotion requests. Defs.' 56(a)1 Statement, Ex. AA. The Union agreed that it would be liable for associated costs should it subsequently violate Settlement Agreement 2. Mr. Gagliardi signed Settlement Agreement 2.

On July 12, 2001, Mr. Gagliardi filed a discrimination claim with the CHRO and the United States Equal Employment Opportunity Commission ("EEOC"). Mr. Gagliardi's claim was dismissed by the CHRO as untimely and he was provided a "release of jurisdiction" allowing him to bring suit in civil court.

On November 1, 2001, EHHA filed another complaint with the BLR, alleging that on or about October 10, 2001, the Union filed another grievance on behalf of Carmelo Gagliardi regarding EHHA's unwillingness to promote him. Defs.' 56(a)1 Statement, Ex. BB. EHHA complained that the October 10, 2001, grievance violated Settlement Agreement 1 and Settlement Agreement 2.

On March 19, 2002, Plaintiff filed the complaint in this matter. On December 1, 2003, EHHA Defendants filed the underlying motion for summary judgment.

On October 22, 2002, Mr. Gagliardi again filed a grievance after being denied another promotion request. This time, however, Mr. Gagliardi filed the grievance without the assistance or support of the Union. On October 24, 2002, the Executive Board of the Union drafted a memorandum to Mr. Gagliardi referring, in order to explain its refusal to provide assistance, to the two aforementioned settlement agreements. The Union further advised Plaintiff that, unless the job requirements or his qualifications change, the Union would not be able to assist him with any future grievances regarding this issue.

## Discussion

I.   **Standard of Review**

   A.   **Summary Judgment - Fed.R.Civ.P. 56.**

Summary judgment may not be granted unless the Court determines that there is no genuine issue of material fact to be tried and that the moving party is entitled to judgment as a matter of law. Dobrich v. Gen. Dynamics Corp., Electric Boat Div., 40 F.Supp.2d 90, 93 (D. Conn. 1999); Fed.R.Civ.P. 56(c).  Upon the filing of a motion for summary judgment, "the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  The burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Dobrich, 40 F.Supp.2d at 93.  See also Anderson v. Liberty Lobby, 477 U.S. 242, 256 (1986)(plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  If the

8

plaintiff fails to provide any proof of a necessary element of the plaintiff's case, then there can be no genuine issue as to any material fact.  <u>Id.</u>  A complete failure to provide proof of an essential element renders all other facts immaterial.  <u>Id.</u>; <u>see also</u> <u>Goenaga v. March of Dimes Birth Defects Found.</u>, 51 F.3d 14, 18 (2d Cir. 1995)(movant's burden is satisfied if it can point to an absence of evidence to support an essential element of nonmoving party's claim).

## II.  <u>Standard of Review As Applied</u>

### A.  Section 1983 Claims.

#### (1)  First Amendment Retaliation (Count One).

"To state a claim under section 1983, the plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).

EHHA, along with other municipal housing authorities, was created by section 8-40 of the Connecticut General Statutes.  "In each municipality of the state there is created a public body corporate and politic to be known as the "housing authority" of the municipality ...."  C.G.S.A. § 8-40.

The EHHA was created to perform state and municipal housing functions.  It performs these functions at the behest and

encouragement of the state and the municipality that it serves. Also, EHHA may receive financial assistance and support from the State of Connecticut. <u>See</u> C.G.S.A. § 8-44a. EHHA is a state actor for the purposes of the section 1983 claims and the Defendants acted under color of state law. <u>Burr v. New Rochelle Mun. Hous. Auth.</u>, 479 F.2d 1165, 1167 (2d Cir. 1973)(rejecting municipal housing authority's claim that it is not a government agency and that, therefore, there was no state action); <u>see generally Gorman-Bakos v. Cornell Coop of Schenectady County</u>, 252 F.3d 545, (2d Cir. 2001).

If plaintiff proves state action, he must also prove a deprivation of federally protected rights. Plaintiff claims that he was unconstitutionally retaliated against because he is active in the Union. "Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights." <u>ACLU v. Wicomico County</u>, 999 F.2d 780, 785 (4th Cir. 1993), <u>citing Perry v. Sindermann</u>, 408 U.S. 593, 597 (1972). "To survive summary dismissal, a plaintiff asserting First Amendment retaliation claims must advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." <u>Dawes v. Walker</u>, 239

F.3d 489, 492 (2d Cir. 2001).

The speech or conduct at issue in Count One is protected by the First Amendment.  The Plaintiff is a member and has served as the steward and president of the Union.  Plaintiff claims that the Defendants were motivated to deny his promotion requests because Plaintiff was active in his union.  Clue v. Johnson, 179 F.3d 57 (2d Cir. 1999) (holding union activities are protected under First Amendment); Cf. Cobb v. Pozzi, 363 F.3d 89, 107 (2d Cir. 2004) (holding that the Second Circuit has "not had occasion to decide whether union membership alone touches on a matter of public concern and therefore provides a proper basis for a First Amendment Retaliation claim").  "There is no doubt that retaliation against public employees solely for their union activities violates the First Amendment."  Clue, supra, at 60, citing Boals v. Gray, 775 F.2d 686, 693 (6th Cir. 1985).  The Plaintiff's union activities are protected under the First Amendment.

Next, the Defendants do not dispute that adverse action was taken against the Plaintiff. "Adverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2002).  The Plaintiff applied for numerous promotions and was consistently denied.  This constitutes adverse employment action.

Crucially, however, the Plaintiff must also establish a causal connection between the union activity and the adverse action.  The

11

Plaintiff failed to make such a connection.  In fact, much of the Plaintiff's union activity occurred *after* the Plaintiff was first refused a promotion.  It appears that the flurry of grievances filed on Plaintiff's behalf began in 1989, after he was denied a promotion request.  During subsequent years, Plaintiff was consistently denied a promotion and he began to file grievances to, *inter alia*, contest the license requirement.  EHHA began denying Mr. Gagliardi's promotion requests before he became active in his union.  Defendants offered a clear justification for the promotion denials – Mr. Gagliardi was not qualified.  Plaintiff has not provided this Court with evidence to establish even a loose connection between his union activity and the refusal to grant his promotion requests.  Accordingly, this Court finds that the Plaintiff did not satisfactorily establish an essential element of a First Amendment Retaliation claim.

For the foregoing reasons, summary judgment as to Count One is granted.


**(2)  Due Process (Count Two).**

Plaintiff also asserts that the failure to promote him resulted in a deprivation of his due process rights.  "Due process claims may take one of two forms: procedural due process or substantive due process." <u>Gordon v. Nicoletti</u>, 84 F.Supp.2d 304, 308 (D. Conn. 2000).  In his amended complaint, Plaintiff did not

specify whether his due process claim was substantive or procedural; however, he did identify a substantive due process claim in his opposition to the present motion.

"Substantive due process claims concern limitations on governmental conduct toward an individual regardless of the procedural protections." Id., citing DeLeon v. Little, 981 F.Supp. 728, 734 (D. Conn. 1997). "[T]o establish a violation of either substantive or procedural due process, plaintiff must initially show that she was deprived of a property or liberty interest." Gordon, 84 F.Supp.2d at 308-09. "Thus, our threshold inquiry is whether plaintiff had a constitutionally protected property or liberty interest." Id. at 309. If the Plaintiff has proven he has a protected interest, this Court "will then determine whether or not there was a deprivation of that interest." Id.

Plaintiff asserts that he has a property interest in a promotion based on the CBA. "Property interests are created not by the Constitution itself, but are created and defined by independent sources such as state statutes, regulations, municipal ordinances, and contracts." Gordon, 84 F.Supp.2d at 310. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Bd. Of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972). A promotion is not a property

interest unless the plaintiff has a claim of entitlement to it. Andreucci v. City of New Haven, 916 F.Supp. 146, 147-48 (D. Conn. 1996). In Gordon, the plaintiff, a teacher, contested her transfer from a middle school, where she taught language arts, to a high school, where she would teach math and writing classes. Gordon, 84 F.Supp. at 307. The plaintiff claimed she had a property interest in remaining at a particular school and in teaching a particular subject. Id. at 309. The court found that "[n]one of these aspects of plaintiff's teaching position, however, are considered property interests protected by the Constitution." Id., citing Anglemyer v. Hamilton County Hosp., 58 F.3d 533, 539 (10th Cir. 1995). In McMenemy v. City of Rochester, 241 F.3d 279, 286 (2d Cir. 2001), the plaintiff, a firefighter, claimed a property interest in a promotion. There, the court held that "a civil servant seeking a promotion 'does not possess any mandated right to appointment or any other legally protectable interest.'" Id., quoting Cassidy v. Mun. Civ. Serv. Comm'n, 37 N.Y.2d 526, 529 (1975). In McMenemy, the plaintiff relied on a promise allegedly made to him by his superior that he would be promoted. Id. at 286. The court held that plaintiff's superior's promise of a promotion was not sufficient to create a property interest for the plaintiff in a promotion. Id.

Mr. Gagliardi cites numerous cases involving claims of a property interest in a promotion or continued employment based on

contractual provisions.   Pl.'s Opp'n at 20.   Mr. Gagliardi, however, does not have an employment contract with EHHA.  Instead, he relies on the relevant language in section 4.3 of the CBA, which relates to seniority, to support his claim of a property interest in a promotion.  That section states "[w]hen a vacancy exists or a new position is created, the employee with the highest seniority shall be given the first opportunity to fill the position *provided he is qualified*."   See Pl.'s 56(a) Statement, Ex. X (emphasis added).  "If he refused or is proved unqualified, it shall go to the next senior man who is qualified." Id.  This does not create a property interest for the plaintiff.   EHHA has required an occupational license of all Maintenance Mechanics since 1981.[4] The Arbitration Board held that the Defendants did not violate the CBA by deciding not to promote Mr. Gagliardi because he was not qualified.   That decision was upheld by the Connecticut Superior Court and Plaintiff has not provided any evidence to this Court to prove that he is now qualified as a Maintenance Mechanic or a Maintenance Supervisor – the latter position requiring a higher level of knowledge and experience than the Mechanic position.

Since Plaintiff has not met the minimum qualifications required to be promoted, he cannot claim a property interest in the

---

[4] Plaintiff points specifically only to one employee, Mike Seamon, who was hired without a license.  Mr. Seamon, however, was hired as a Maintenance Supervisor and Maintenance Supervisors are not required to be licensed.

promotion.   If the positions applied for were tied *solely* to seniority, Plaintiff's case might have merit.  Plaintiff has failed to demonstrate a property interest that is protected by the Constitution and, therefore, his substantive due process claim fails.

### (3)  Equal Protection (Count Two).

Plaintiff also claims in Count Two that the requirement that Maintenance Mechanics be licensed has been "selectively enforced" and, therefore, he has been deprived of the right to equal protection.  "To establish an equal protection violation based on selective enforcement, a plaintiff must ordinarily show (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 16 (2d Cir. 1999). The Equal Protection Clause of the Fourteenth Amendment directs that "all persons similarly situated ... be treated alike." Id. (quoting City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1982).

Mr. Gagliardi fails to allege facts sufficient to satisfy both of the necessary elements.  **First**, he fails to establish that he

was situated similarly to any of the employees who were ultimately hired instead of Plaintiff. As stated above, Plaintiff has not identified any employees who have been promoted to the position of Maintenance Mechanic without a license. The employees Plaintiff specifically identified as having been promoted or hired as Maintenance Mechanics were licensed when they were hired. Plaintiff has not shown that he was similarly situated with any of the licensed or qualified employees who received promotions.

**Second**, assuming, for the purposes of this motion, that Plaintiff did prove he was similarly situated with others who received more favorable treatment, he has not shown that he was treated less favorably based on an impermissible motive. Count Two of the amended complaint incorporates Count One, which contains allegations relating to the Plaintiff's union activity and workers' compensation claims. However, the evidence offered to establish that Plaintiff's union activity or his workers' compensation claims motivated the perceived selective treatment is feeble. As stated, a license has been required of all applicants for the position of Maintenance Mechanic since 1981. Plaintiff began filing grievances *after* he had been denied a promotion. Further, Plaintiff's workers' compensation claim occurred a full three years before he was denied a promotion, and numerous promotion denials occurred prior to the 1993 re-injury. Mr. Gagliardi has not established a nexus between the workers' compensation claims and any adverse

17

employment action.  Again, this issue was conspicuously not raised during any of the grievances or hearings, including the arbitration and subsequent Superior Court motion.

Without more, Plaintiff's assertion that Defendants violated the Equal Protection Clause by failing to promote him is speculative at best.  Plaintiff has failed to allege sufficiently both essential elements of an Equal Protection claim and, therefore, Defendants' motion for summary judgment as to Count Two is granted.

**(4)   First Amendment Retaliation (Count Eight).**

In the Plaintiff's amended complaint, he alleges that Defendants Arn and Madigan retaliated against him in response to his filing of the present action.  To reiterate, in order to state a claim for First Amendment retaliation, the plaintiff must show (1) that the speech or conduct at issue was protected, (2) that the plaintiff suffered adverse action by the defendant, and (3) that there was a causal connection between the protected speech and the adverse action.  Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001).

As stated earlier, the Plaintiff's union activities are protected by the First Amendment.  Clue v. Johnson, 179 F.3d 57 (2d Cir. 1999)(holding union activities are protected under First Amendment).  Lawsuits which present possible matters of public concern may be protected by the First Amendment.  See Grossman v.

Schwartz, No. 84 Civ 3323, 1986 WL 739, at *3 (S.D.N.Y. January 6, 1986).

The Defendants allegedly approached the Plaintiff outside of a company Christmas party and "verbally and physically threaten[ed] the plaintiff" in an attempt to intimidate him and persuade him to abandon the present lawsuit. Am. Compl. at Count Eight, ¶¶ 1-5. Later, Defendants Arn, Madigan, and Dumas allegedly arranged a meeting with the Plaintiff where they questioned him about this lawsuit. Am. Compl. at Count Eight, ¶¶ 6-8. According to the Plaintiff, the questioning became hostile, Plaintiff was again threatened, and Defendant Madigan was ultimately restrained to prevent him from making contact with the Plaintiff. Am. Compl. at Count Eight, ¶¶ 9-11. Defendant Madigan allegedly told the Plaintiff, "[i]f you take this any further you'll be sorry." Am. Compl. at Count Eight, ¶ 12.

The allegations of verbal and physical threats are sufficient to establish adverse action on the part of Defendants Arn, Madigan, and Dumas, and those allegations have not been sufficiently refuted by facts which are undisputed. Finally, it is also clear that there is a causal connection between the Plaintiff's protected speech and the alleged adverse actions. The individual Defendants cannot claim a qualified immunity as the alleged actions, if true, "violate clearly established ... constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457

U.S. 800, 818 (1982).

For the foregoing reasons, summary judgment as to Count Eight is hereby denied.

### B.    Age Discrimination in Employment Act (Count Four).

In Count Four, Plaintiff claims that Defendants' decisions to deny his promotion requests were motivated by age discrimination.

The Age Discrimination in Employment Act ("ADEA") was enacted to "promote the employment of older persons based on their ability rather than age" and "to prohibit arbitrary age discrimination in employment." 29 U.S.C. § 621(b). In an ADEA claim, the plaintiff has the initial burden of establishing a *prima facie* case of age discrimination. Stanojev v. Ebasco Services, Inc., 643 F.2d 914, 919 (2d Cir. 1981). In order to establish a *prima facie* case of age discrimination in violation of the ADEA, the plaintiff must demonstrate that (1) he was within the protected age group (at least forty years old), (2) he was qualified for the position, (3) he was subject to an adverse employment action, and (4) the adverse action occurred under "circumstances giving rise to an inference of discrimination." Terry v. Ashcroft, 336 F.3d 128, 137-38 (2d Cir. 2003), citing Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001). Once the plaintiff has established a *prima facie* case of age discrimination, the burden then shifts to the defendant to offer a legitimate, nondiscriminatory reason for the adverse

employment action.  Terry, 336 F.3d at 138.  Finally, after the defendant has provided a neutral reason for the adverse action, the burden shifts back to the plaintiff and "the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination."  Id., citing Stern v. Trustees of Columbia Univ. In City of New York, 131 F.3d 305, 312 (2d Cir. 1997).

The Court begins by analyzing the Plaintiff's *prima facie* case.  The first and third parts of the four-part test appear to be easily satisfied.  Plaintiff was part of the protected class.  The ADEA protects employees who are at least forty years of age, 29 U.S.C. § 631(a), and the Plaintiff was over the age of forty at the time of his first request for a promotion in 1989.[5]  Also, there is no dispute that the Plaintiff suffered adverse employment action – he was denied numerous promotions.

Next, however, the Plaintiff must show that he was qualified for the position he sought.  The Plaintiff claims his years of experience at EHHA qualified him.  While the Plaintiff's *prima facie* burden is *de minimis*, see Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 203-04 (2d Cir. 1995)("... the showing that a plaintiff must make as to the elements of the *prima facie* case in order to

---

[5] Plaintiff was born on February 12, 1941.  See Defendants' 56(a)1 Statement, Ex. CC.

defeat a motion for summary judgment is *de minimis*"), the Court is not convinced that Plaintiff has established the necessary qualifications. Furthermore, the Arbitration Board's decision that Plaintiff is not qualified is highly persuasive. Even if the Arbitration Board's decision is not binding, it is instructive on the issue of Plaintiff's qualifications.[6] Plaintiff's relevant qualifications have not changed since that award, and neither have the job requirements. Plaintiff has not shown himself to be qualified and therefore has failed to establish the second element of his *prima facie* ADEA claim.

Finally, assuming *arguendo* Plaintiff had proven himself qualified, he must then demonstrate that the circumstances surrounding the adverse employment action gave rise to an inference of age discrimination. See Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001). Plaintiff identifies two employees, Bill Hebert and Dave Wentworth - both younger than Plaintiff, who were hired instead of him. However, both Mr. Hebert and Mr. Wentworth had occupational licenses when they were hired, which seems to reinforce Defendants' argument that the licensing issue is the true impediment to Plaintiff's advancement. See Pl.'s 56(a)2 Statement at 4. The Plaintiff failed to allege any other facts that might give rise to an inference that age had any

---

[6] As noted earlier, the Arbitration Board found Plaintiff unqualified because he did not possess a license or the necessary training and experience.

influence on EHHA's decision not to promote him.  By way of example, he provides no evidence of any age-related comments made by the Defendants to him or anyone else, or of any EHHA policy of refusing to promote older employees.  Despite the *de minimis* requirement, the Court finds Plaintiff's showing to be insufficient to form the basis for an inference of age discrimination.  Therefore, the Plaintiff has failed to establish a *prima facie* case of age discrimination.

However, assuming *arguendo* that Plaintiff had established a *prima facie* case of age discrimination, the Defendants satisfactorily offered a legitimate, nondiscriminatory reason for denying Plaintiff's promotion requests.  The Defendants did not promote Plaintiff because he was not qualified.  Again, applicants for Maintenance Mechanic positions must demonstrate experience and proof of an occupational license and Plaintiff never satisfied this requirement.  Moreover, he never explained to the Court why he did not obtain, or even attempt to obtain, an occupational license.  In fact, it appears from the Plaintiff's opposition papers that many other Maintenance Aides were licensed despite the fact that Maintenance Aides are not required to be licensed.  <u>See</u> Pl.'s Opp'n at 4.  Defendants satisfied their burden of providing a legitimate, nondiscriminatory reason for their unwillingness to promote Mr. Gagliardi.

Since the Defendant supplied the Court with its legitimate,

nondiscriminatory reason, the burden then shifts back to the Plaintiff to show that the Defendants' proffered reason is mere pretext or that, despite the legitimate reason, the circumstances surrounding the adverse action permit an inference that discrimination played a role, in part or in whole, in the adverse employment action.  See Mauro v. Southern New England Telecomms., Inc., 208 F.3d 384, 388 (2d Cir. 2000); Fisher v. Vassar Coll., 114 F.3d 1332, 1338-39 (2d Cir. 1997); McInnis v. Town of Westport, No. Civ. 3:03CV1803(JBA), 2005 WL 1522044, at *7 (D. Conn. June 28, 2005).  Again, Plaintiff offers little evidence more than his conclusory statements that age played a role in the decision not to promote him.[7]  Defendants uttered no discriminatory statements, their policy of requiring an occupational license appears legitimately designed to provide safe living conditions for its residents, and there is no evidence that younger employees were hired without licenses.  The Plaintiff has not adequately shown that the Defendants' explanation is pretext or that age discrimination motivated the Defendants in any way.

For the foregoing reasons, summary judgment is hereby granted as to Count Four.

---

[7] Plaintiff's affidavit [Doc. No. 94] was neither signed nor sworn to and is not considered in the Court's analysis.

24

**C.    Connecticut Fair Employment Practices Act (Count Five).**

In Count Five, Plaintiff has named only a nonparty, "Transport." However, the Court addresses the count as though Plaintiff had named these Defendants.

Both parties seem to agree that in Connecticut, where a plaintiff has alleged violations of the ADEA and the Connecticut Fair Employment Practices Act ("CFEPA"), the court should apply the same analysis to the CFEPA claims that it applies to the ADEA claims. See Wroblewski v. Lexington Gardens, Inc., 188 Conn. 44, 53 (1982); Gorman v. Earmark, Inc., 968 F.Supp. 58, 64 (D. Conn. 1997); Craine v. Trinity Coll., 259 Conn. 625, 637 n.6; Defs.' Mem. at 15; Pl.'s Mem. In Opp'n at 23.

For the reasons this Court granted summary judgment to the Defendants as to the ADEA claim in Count Four, this Court likewise grants summary judgment to the Defendants as to Plaintiff's CFEPA claim in Count Five.

**D.    Workers' Compensation Claim (Count Six).**

Similarly, in Count Six, though he mentions "The Housing Authority," Plaintiff names as a defendant only nonparty "Transport." Am. Compl. at ¶¶ 75, 77-79. However, as with Count Five, the Court addresses the merits as though only the proper defendants were named.

Section 31-290a of the Connecticut General Statutes provides

that "[n]o employer who is subject to the provisions of this chapter shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter."  Plaintiff claims that the Defendants failed to promote him and charged him "sick time" in violation of section 31-290a.  The Court disagrees and grants the Defendants' motion for summary judgment as to Count Six.

"The burden of proof in actions involving § 31-290a is stated in Ford v. Blue Cross & Blue Shield of Connecticut, Inc. and Chiaia v. Pepperidge Farm, Inc.," and it is similar to the burden shifting analysis applied in ADEA claims.  Kopacz v. Day Kimball Hospital of Windham County, Inc., 64 Conn. App. 263, 268 (2001).  First, "[t]he plaintiff bears the initial burden of proving by [a] preponderance of the evidence a *prima facie* case of discrimination."  Id. Second, if the plaintiff successfully establishes a *prima facie* case, "the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its actions." Id. Third, "if the defendant carries this burden of production, the presumption raised by the *prima facie* case is rebutted, and the factual inquiry proceeds to a new level of specificity." Id. "The plaintiff then must satisfy the burden of persuading the factfinder

26

that the plaintiff was the victim of discrimination either directly by persuading the court or jury that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Id.

In order to establish a *prima facie* case pursuant to section 31-290a, an employee must satisfy a three-pronged test. See Desanto v. Stoltz Sea Farm, No. CV-03-0285392-S, 2005 WL 896008, at *2 (Conn. Super. Ct. March 15, 2005); also see Mele v. City of Hartford, 270 Conn. 751, 769-70 (2004); Diaz v. Housing Authority, 258 Conn. 724, 730-31 (2001). The plaintiff must establish that (1) he filed a claim for workers' compensation benefits or otherwise exercised his rights under the Workers' Compensation Act; (2) an employment action disadvantaging the plaintiff occurred; and (3) there is a causal connection between the exercise of the plaintiff's rights under the Workers' Compensation Act and the employment action that disadvantaged the plaintiff. Id.

It is not disputed that the Plaintiff filed a claim for workers' compensation benefits under the Workers' Compensation Act. See Pl.'s 56(a)2 Statement ¶ 25. Further, the Plaintiff suffered adverse employment action when his promotion requests were denied. See Defs.' Mem. at 4. However, the Plaintiff has not established the necessary causal connection between his workers' compensation claim and the refusal by EHHA to promote him.

Mr. Gagliardi was injured while working for EHHA during the

early summer of 1986. <u>See</u> Pl.'s Mem. in Opp'n at 4. He began applying for promotions in 1989 - three years after this work-related injury. In 1993, there was a dispute over the sick time charged to the Plaintiff during a related re-injury of the shoulder Plaintiff injured in 1986. After complaining to EHHA, the Defendant had the time keeping error corrected in 1998. Pl.'s Mem. in Opp'n at 23.

The burden is on the Plaintiff to offer evidence to support an inference of the necessary connection between the workers' compensation claim and the adverse action, and Plaintiff has offered no evidence to establish the requisite connection outside of his own assertions. A rational fact finder could not conclude that the necessary connection has been made.

However, even if the Plaintiff had established a *prima facie* case, the Defendants have successfully met their burden of producing evidence of a legitimate, nondiscriminatory reason for their actions. As explained earlier, the Defendants justify the denial of Plaintiff's promotion requests by showing that Plaintiff is inexperienced and lacks an occupational license.

Again, once the defendants have met their burden, the burden shifts back to the plaintiff to prove that he was the victim of discrimination by showing (1) a discriminatory reason more than likely motivated the defendants to refuse the plaintiff's promotion requests or (2) the defendants' proffered legitimate reason is not

trustworthy.  See Mauro, supra, at 388.  Once again, the Plaintiff
has not met his burden.  Plaintiff has not provided any evidence,
other than his own assertions, that the refusal to promote him was
in any way related to his workers' compensation claims.  Plaintiff
has not established the necessary causal connection between the
claim and EHHA's refusal promote him.  There is no evidence that
Defendants' justification for refusing to promote Plaintiff is
pretext.  Defendants' motion for summary judgment as to Count Six
is granted.

### E.    Intentional Infliction of Emotional Distress (Count Seven).

Plaintiff also claims, in Count Seven, that the Defendants
intentionally caused him severe emotional distress.

In order to sustain a claim of intentional infliction of
emotional distress, the plaintiff must establish (1) that the actor
intended to inflict emotional distress, or should have known that
emotional distress would be a likely result of his conduct; (2) the
defendant's conduct was extreme and outrageous; (3) the defendant's
conduct was the cause of the plaintiff's distress; and (4) the
emotional distress sustained by the plaintiff was severe.  Reed v.
Signode Corp., 652 F.Supp. 129, 136 (D.Conn. 1986) (citing Petyan
v. Ellis, 200 Conn. 243, 253 (1986)).

Mr. Gagliardi alleges he "suffered numerous retaliatory acts"
at the hands of the Defendants.  Pl.'s Opp'n at 24.  Particularly,

he claims 1) EHHA denied Plaintiff's numerous promotion requests, 2) EHHA refused to meet with Plaintiff on a particular occasion, 3) EHHA reduced Plaintiff's available "sick time" while he was properly receiving workers' compensation, and 4) verbal and physical threats were made by EHHA employees who intended to coerce the Plaintiff into the abandonment of this lawsuit. <u>See</u> Pl.'s Opp'n at 24-25.

Because Plaintiff fails to satisfy the second and fourth parts of the four-part test, this Court does not address the first and third parts.

Plaintiff did not show that Defendants' behavior was extreme and outrageous. Whether or not a Defendant's conduct was "sufficient to satisfy the requirement that it be extreme and outrageous" is "initially a question for the court . . . ." <u>Longo v. Waterbury Hospital Health Center</u>, No. CV030176553S, 2005 WL 407785, at *2 (Conn. Super. Ct. Jan. 14, 2005); <u>Dobrich v. General Dynamics Corp., Electric Boat Div.</u>, 40 F.Supp.2d 90, 104-5 (D.Conn. 1999); <u>Johnson v. Chesebrough-Pond's USA Co.</u>, 918 F.Supp. 543, 552 (D.Conn. 1996).

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized

> community.  Generally, the case is one in which the
> recitation of the facts to an average member of the
> community would arouse his resentment against the actor,
> and lead him to exclaim, 'Outrageous!'

Restatement (Second) Torts § 46, comment (d), p. 73 (1965).

Defendants' refusal to promote or meet with Plaintiff, its alleged

mishandling of Plaintiff's sick time, or even the verbal or

physical threats made by EHHA employees do not rise to the level of

conduct that is more distressing than tortious or criminal conduct.

This alleged behavior simply could not be regarded as "beyond all

possible bounds of decency," or "atrocious."  See Hill v. Meta

Group, 62 F.Supp.2d 639, 644 (D. Conn. 1999)("No case has held that

a discriminatory failure to promote, standing alone, amounts to

extreme and outrageous behavior").  "Conduct on the part of the

defendant that is merely insulting or displays bad manners or

results in hurt feelings is insufficient to form the basis for an

action based upon intentional infliction of emotional distress."

Appleton v. Bd. of Education, 254 Conn. 205, 211 (2000).  Courts

have found behavior that is appreciably more repugnant than what

has been alleged here by the Plaintiff to be insufficient to meet

"the extremely high threshold of outrageous and intolerable conduct

that is required to sustain a claim for intentional [infliction of]

emotional distress."  Cowras v. Hard Copy, 56 F.Supp.2d 207, 210

(D. Conn. 1999) (summary judgment granted where plaintiff failed to

demonstrate extreme and outrageous behavior on the part of

defendant media company where media company aired a videotape of

plaintiff's arrest for driving while intoxicated and also falsely asserted during television program that plaintiff filed and then withdrew a claim for police brutality); <u>see</u> <u>also</u> <u>Hill</u>, 62 F.Supp.2d at 644 (referring to complaint alleging sexist remarks and racial discrimination by employer, the court found, "[i]ndeed, numerous cases have dismissed emotional distress claims involving much more egregious behavior than that which is alleged in the instant case."); <u>Morrissey v. Yale Univ.</u>, 48 Conn.Supp. 394, 396 (stating, in *dictum*, success on the merits would be "unlikely, at best," where coworkers made incredibly derogatory statements to plaintiff at her place of employment, including a degrading comment about the plaintiff's weight, a vulgar threat of physical violence, and a reference to her husband's ability to procreate).

Finally, the Plaintiff has not alleged facts sufficient to establish the fourth part of the test - namely that he suffered "severe distress." There is no indication that the Plaintiff either sought or received treatment by a doctor or mental health professional. <u>See</u> <u>Mordhorst v. Skinner Valve Div. of Parker Hannifin</u>, No. 399CV00561, 2001 WL 863433, at *4 (D.Conn. July 24, 2001). Nor has Plaintiff missed any work due to the claimed emotional distress. <u>See</u> <u>id.</u> (Granting summary judgment where plaintiff fails to allege that he sought or received treatment from a doctor and where "he has missed only one day of work in three years for health-related reasons.") As stated above, a movant's

burden is satisfied by showing it can point to an absence of evidence to support an essential element of nonmoving party's claim. <u>Goenaga</u>, 51 F.3d at 18. Here, the Defendants' conduct was not extreme or outrageous, and the Plaintiff has not suffered severe distress.

For the aforementioned reasons, this Court grants Defendants' motion for summary judgment as to Count Seven.

## **Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment [Doc. No. 66] is hereby GRANTED as to Counts One, Two, Four, Five, Six, and Seven, and DENIED as to Count Eight. As such, Defendants Arn, Dumas, and Madigan are the only remaining EHHA Defendants.


SO ORDERED


_____
ELLEN BREE BURNS
SENIOR U.S. DISTRICT JUDGE

Dated at New Haven, Connecticut this ___ day of September, 2005.